HILL *vs.* THE STATE OF GEORGIA.

1. A school-boy of such years and discretion as to be responsible for crime, cannot voluntarily throw a stone at a comrade and hit him, though in sport or play, and then defend against a charge of assault and battery by urging that he acted without malice or anger and expected his playmate to dodge, as was customary, and evade the blow.

2. The court (if it will) may enumerate acts, etc., constituting all the essentials of the offense charged, and instruct the jury that if these be established the accused is guilty and the duty of the jury would be to find him guilty. A new trial will not be ordered for this manner of charging, if the verdict be indubitably correct.

Hill *vs.* The State.

Criminal law. Assault and battery. Charge of Court. Before Judge CLARK. City Court of Atlanta. April Term, 1879.

Hill was placed on trial for assault and battery. The evidence made substantially the case presented by the opinion. The jury found him guilty. He moved for a new trial upon the following grounds:

1. Because said verdict was contrary to law, and contrary to the evidence.

2. Because the court erred in refusing to charge the jury as to the *animus* of the accused, as follows: " If he (the accused) did it (throwing and hitting prosecutor with a rock at school) in sport, as rough playing among boys, and not in anger, he would not be guilty. The *intention* is the test—if the circumstances show no intention to do bodily harm then he is not guilty," and in charging in lieu thereof as follows: " If you believe from the evidence that Willie Hill, the accused, threw a rock at prosecutor to hit him and did hit him—or he was the object of his throw, and hit him, and there was no legal justification, he is guilty of assault and battery, and it is your duty so to find. But if you believe he did not throw at Hill and hit him, and that Hill was not the object of his throw—or there was legal justification, then you would find him not guilty."

3. Because the court *repeated* his charge as above to the jury, and declined to draw any distinction between the throwing of rocks " in anger" and the throwing of rocks " in sport"—limiting the consideration of the jury to the simple act of the intention of " throwing and hitting"— excluding thereby entirely " the *animus*" whether in sport or in anger, such instruction being error and calculated to mislead the jury.

The motion was overruled and defendant excepted.

S. B. SPENCER, for plaintiff in error, cited Code, §4292; 58 *Ga.*, 48; 60 *Ib.*, 509; 2d Bish. Cr. Law, 76, case of

misfortune or accident; Code, §4302; 30 *Ga.*, 80; 35 *Ib.*, 80. Charge as given error, 57 *Ga.*, 505; 34 *Ib.*, 262; 32 *Ib.*, 521.

HOWARD VAN EPPS, city solicitor, for the state, cited 7 *Ga.*, 13.

BLECKLEY, Justice.

According to the evidence, a company of boys attending school were all out in the yard and most of them were engaged in playing. One (Willie Love by name) did not wish to play. An attempt was made by some of his fellows to force him into the sport, as was customary in dealing with a reluctant boy. One Richardson pulled him away from the fence. Love shoved Richardson off. The latter then threw a rock and Love dodged it. Whilst Love was in the act of rising from the position which he had taken to evade this blow, Willie Hill, the accused, threw a rock, and Love, not seeing it, was hit in the mouth. If he had seen it in time he could have dodged it too. It was a way of playing among the boys, to throw rocks at one another, and the evidence indicates that dodging was generally expected. Love and Hill were relatives, and were perfectly friendly. There was no quarrel or cause of quarrel between them, and never had been. The blow with the rock split Love's lip and broke one of his teeth.

1. There is no suggestion that the accused was wanting in age or development, so as to be incapable of committing crime, nor that the throwing of the stone was involuntary. The sole defense is, that he threw in sport, without ill-will or anger, and with no intention to hurt or even hit, relying upon the expertness of his school-fellow in dodging. It is not shown, however, that he did not throw *at* the latter, or that he gave any notice or warning so as to put him upon guard. Grant that he desired and expected a successful "dodge," yet he did not get it, and the other boy was in no fault in not responding with the anticipated maneu-

ver; he did not see the danger. Throwing stones at others for amusement is a dangerous sport, because the tendency of it is to wound or bruise, and there is no certainty that in a given case the injury will be slight rather than serious. When one has hurled a stone and parted with all power over it, the mischief it may do where it strikes is not matter of calculation, but in a great degree of mere chance. Life itself is not safe where stones are flying about, even though they be thrown by a boy. In the present case, if death had ensued the offense would have been manslaughter at the least. "So, throwing stones at another wantonly in play, being a dangerous sport, without the least appearance of any good intent, or doing any other such idle action as cannot but endanger the bodily hurt of some one or other, and by such means killing a person, is manslaughter." Whar. Hom., §162. "Where unsuitable and deadly weapons are used in lawful games, the act itself becomes unlawful." *Ib.*, §479; 1 Hale P. C., 472, 473. "If when engaged in an unlawful or dangerous sport, a man kill another by accident, it is manslaughter. . . . . Death produced by practical joking is manslaughter." 2 Whar. Cr. Law, §1012. In *Studstill vs. The State*, 7 *Ga.*, 2, a boy was shot at the distance of two hundred yards, with an old gun which some of the sporting party said would not hit him at fifteen steps, and the shooting was done when "they were all in a laugh." This court said, on page 13, "Nor can we sanction the position assumed by counsel, that owing to the distance, it was improbable that the ball would reach its object; and that, consequently, the killing is reduced to involuntary manslaughter. Can he who takes deliberate aim at another with a rifle, and kills him, be said not to have intended it? We think not. He might, it is true, suppose the chances to be against it; still he puts forth all his skill to reach the mark and he succeeds. It is enough, as the act itself was unlawful, if the killing was the possible consequence of the act. To hold otherwise would be to trifle with human life." For boys to throw at one

another stones of a size and weight to lacerate lips and break teeth, is not innocent play, but wild and wanton mischief, and if they are of responsible age and average mental capacity, they must answer for the consequences of their reckless conduct. It is good for the young to engage in rough and hardy sports, but the state cannot permit her children to beat and batter one another, even at school, with stones or other dangerous missiles. Bad boys should be made to understand that they are accountable to the law, as well as to parents and teachers, for throwing rocks and thereby inflicting personal injuries.

2. It is insisted by counsel for plaintiff in error, that even granting the law to be as we have laid it down, the court erred in charging the jury that if a given state of facts should, by them, be found to exist, the accused was guilty, and it would be the duty of the jury to find him guilty. The obnoxious language is set out in the second ground of the motion for a new trial, as numbered in the reporter's statement. Formulated in a general proposition, the substance of the charge complained of is this: If one throw a rock at another to hit him, and do hit him, or if one throwing a rock make another the object of his throw, and hit him, without legal justification, the thrower is guilty of an assault and battery, and it is the duty of a jury trying him for the offense to find him guilty. The entire charge is not in the record, and we must assume that the court gave proper instructions as to reasonable doubt, time, place, etc. There is no suggestion that the charge was deficient in these particulars. The specific objection to which our attention is directed is the stating that the enumerated acts would render the accused guilty, and that if they were committed, the jury should so find. In *Pennaman vs. The State*, 58 *Ga.*, 336, this court approved a charge, to the effect following: If all the allegations in an indictment for perjury be true beyond a reasonable doubt—if the accused, in making an affidavit to have the prosecutrix arrested on a warrant for assault and battery, did wilfully, knowingly,

absolutely and fal ely swear in said affidavit, as he is alleged to have done in the indictment, the jury should find him guilty of perjury. The charge applied directly to the specific facts alleged in the indictment, and embraced the whole of them. For that reason it was pronounced correct. In the present case, the indictment is less specific; an indictment for perjury sets out the identical transaction which has to be proved, but an indictment for assault and battery is expressed in more general terms, and simply alleges that on a given day, in the county, the defendant, with force and arms, committed an assault upon another named person, and then and there unlawfully beat, bruised and ill-treated him. The exact manner and means of the battery are left to be developed by the evidence. A battery may be committed in ways innumerable, and the indictment will apply to one way as well as another. Now, when the whole of the evidence is direct, as it was in the present case, and the court, not saying to the jury what is proved or not proved, groups together from the evidence enough facts to *constitute* an assault and battery, and tells the jury that these facts, if established, render the defendant guilty, and the jury ought to find him guilty, the substance of the instructions differs not in principle from the charge in *Pennaman vs. The State.* It is unquestionably true in law that certain acts will constitute an assault and battery within the scope and legal meaning of an indictment for that offense, and if they are indicated by the evidence, and their existence or non-existence be referred to the jury, the impropriety of telling the jury that in case they are proved the defendant should be found guilty, is no greater than to tell them that if the charges in an indictment for perjury be proved, a verdict of guilty should be rendered. There is a wide difference between resting the result of a trial upon facts which legally *constitute* the offense charged, and making it turn upon other facts which are merely *evidence* of the constituent facts. To illustrate this, I will endeavor to point out the real error which the charge contained in

*Parker vs. The State*, 34 *Ga.*, 262, and also in *Tucker vs. The State*, 57 *Ib.*, 503. The doctrine of the charge in the former of these cases was this : If · a mule be stolen, and a given person be, next day, seen in possession of him, riding him, and the same person cause him to be sold at auction as his property, and receive pay for him, and afterwards voluntarily give his note for the amount to the purchaser, the latter having surrendered the mule to the true owner (the individual from whom he was stolen), such person is, under the law, guilty of stealing the mule, and the jury trying him for the larceny ought to find him guilty. It will be seen that the various enumerated facts do not constitute larceny by the accused, but are only evidence of it, and the vice of the charge is, that the court drew the inference of guilt and directed the jury to adopt that inference (in case the evidentiary facts were proved), instead of merely telling them that they were authorized to infer guilt and might find accordingly. The erroneous part of the charge in *Tucker's* case was to this effect : If goods be stolen from a vessel, and a portion of them be found, at the very time or immediately afterwards, in the possession of a given person, the law presumes that he is the guilty party, and when tried for the larceny the burden of proof is upon him to show that he obtained them honestly, and if he fail in this, the jury should find him guilty. This charge, like that in *Parker's* case, deals only in facts of evidence (indirect or circumstantial evidence), and proceeds to a virtual dictation of the conclusion which the jury are to draw, leaving the jury no freedom except to find whether the enumerated circumstances had been proved or not, and whether the accused had rebutted in the way declared requisite. Abstractly considered, the one exclusive mode of rebutting which the charge points out, namely, to show that the accused obtained the goods honestly, is altogether too restrictive. He might have obtained them very dishonestly, as by cheating the real thief out of them, or by receiving them knowing them to have been stolen, and this

Hill *vs.* The State.

would have been a good accounting for his possession. But the great error of the charge lies in treating the presumption of guilt as one of law, and in saying that the jury should, instead of saying that they could or might find the accused guilty upon it. "The presumption is not one of law but of fact." 1 Whar. Cr. L., §729; 3 Grlf's Ev., §31; Hall *vs.* The State, 8 Ind., 439; State *vs.* Hodge, 50 N. H., 510; Stover *vs.* The People, 56 N. Y., 315; Graves *vs.* The State, 12 Wis., 591; Crilley *vs.* The State, 20 *Ib.*, 231. If the third head-note in *Parker's* case and the corresponding one in *Tucker's*, be confined to cases of indirect or circumstantial evidence, and to the charge upon that evidence (and this, though less than the scope of their letter, is all the scope the facts on which they are based will warrant), I think they are perfectly sound. I am satisfied that a capital part of the error in *Tucker's* case was in classing the presumption of guilt which arises from the possession of stolen goods with presumptions of law, rather than with presumptions of fact. In that case the presumption, it is true, was very powerful, but it was for the jury, not for the court.

Returning now to the case at bar, nothing is more obvious than that it has no resemblance to either of the two just discussed. They were cases of circumstantial or indirect evidence on the main point in controversy, whereas, this is a case of direct evidence on every point. In them the hypothesis of guilt was built, in the charge to the jury, not upon facts which would necessarily involve guilt, but upon facts from which guilt was only inferrable. In this case the enumerated facts made guilt with absolute certainty; for, taking what we have ruled under the first head of this opinion, and it follows necessarily that if one throw a rock at another to hit him, and do hit him, or if one throwing a rock make another the object of his throw, and hit him, without legal justification, the thrower is guilty of an assault and battery. It seems quite certain that the charge was not erroneous; but did we so consider it we should do as was

done in both *Parker vs. The State*, and *Tucker vs. The State*, that is, affirm the judgment, the evidence being beyond all question sufficient, and the verdict indubitably correct.

Judgment affirmed.