In the Supreme Court of Georgia

Decided:   June 2, 2014

S14A0317.  THE STATE v. WYATT.

NAHMIAS, Justice.

Appellee John Randall Wyatt was indicted in Gwinnett County on seven charges related to the death of two-year-old Andrea Marginean.  After the trial court granted his special demurrers on four of the counts, the State filed this interlocutory appeal.  We reverse.

1.    (a)    Although not offered in relation to the special demurrers, the following evidence presented during a hearing on the admissibility of Wyatt's statements to the police provides some background information about the circumstances of this case.  On the morning of April 11, 2009, Wyatt, who was then 29 years old, was babysitting Andrea and her two brothers, aged four and six.  He had been babysitting the three children regularly for the past several months.  When their mother, Nicole Marginean, got home around 1 p.m. that day, Andrea was essentially unresponsive, and Ms. Marginean took her to a

local hospital.  Andrea died three days later.

After taking Andrea to the hospital, Ms. Marginean called Wyatt and told him the police were looking for him.  Wyatt voluntarily went to the police station, where he was questioned for an hour and a half before being advised of his rights pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).  At first Wyatt told the officers the following: When he awoke around 9 a.m. that morning, he checked on Andrea, discovered that her diaper was overflowing with feces, and took her to the bathroom to clean her off and change her diaper.  She did not like taking baths and began screaming on the way to the bathroom.  In the bathroom, Wyatt laid Andrea down on the tile floor, reasoning that the tile would be easier to clean, but she would not remain still and began banging her head on the underside of the toilet.  He grabbed her to hold her down but then had difficulty reaching the water.  This continued for some time, with Wyatt trying to clean and calm Andrea and her banging her head on the floor, the toilet, and the tub.  Once she was clean, Andrea stood up on her own, Wyatt helped her put on her pants, and he then carried her back to her bedroom where she fell asleep.  Later, he checked on her and discovered that her breathing was labored.  He began CPR in an attempt to remove the phlegm

2

he believed was obstructing her breathing. Ms. Marginean returned home at that point and took Andrea to the hospital.

After the officers told Wyatt that his story was inconsistent with the injuries the doctors had found on Andrea, Wyatt changed his account, saying that before the diaper incident Andrea had been disobeying him and sliding down the stairs on her back. After she slid down the stairs twice, he grabbed her and took her to the bathroom, and it was then that she defecated on herself and him. He first maintained that everything else he had said was true, but he then admitted that while he was trying to calm Andrea down in the bathroom, he hit her on the head once or twice with an open hand.

After Wyatt said that he had hit Andrea, the officers took a short break. When they returned, they explained to Wyatt that they wanted to keep talking to him, but that he had said something that could result in his being indicted for battery and so they needed to read him his rights. The officers read him his Miranda rights; they then resumed questioning him for another half hour, and Wyatt confirmed that he had struck Andrea and demonstrated how he struck her.

3

Wyatt was then arrested.[1]

(b)    About three months later, on July 8, 2009, a grand jury indicted Wyatt for felony murder (Count 1), two counts of aggravated battery (Counts 2 and 3), and cruelty to children in the first degree (Count 4).  Counts 1 and 2 alleged that Wyatt committed aggravated battery by depriving Andrea "of a member of her body, to wit: her brain, by striking her head against a hard object."  Count 3 alleged that Wyatt "seriously disfigur[ed] a member of [Andrea's] body, to wit: her back and thighs with bruises, by striking her against a hard object."  Count 4 alleged that Wyatt did "willfully deprive [Andrea] of necessary sustenance, to wit: did fail to seek medical attention in a timely manner, to the extent that the child's health was jeopardized."

Shortly after his indictment, Wyatt filed a motion to suppress the statements he made to the police.  The case then languished for almost four years, until a Jackson-Denno hearing on that motion was held on July 19, 2013.

---

[1]   After the evidence summarized above was presented at a hearing pursuant to Jackson v. Denno, 378 U.S. 368 (84 SCt 1774, 12 LE2d 908) (1964), held on July 19, 2013, the trial court ruled on August 6, 2013 that the statements Wyatt made before being advised of his Miranda rights will be admissible at trial, but the statements made after the Miranda warnings will be inadmissible because Wyatt did not have a clear understanding of his rights and did not execute a clear waiver of those rights.  Neither party has sought to appeal those rulings at this point.

The following week, on July 25, 2013, a grand jury re-indicted Wyatt, now charging him with three counts of felony murder (Counts 1-3), aggravated battery (Count 4), aggravated assault (Count 5), and cruelty to children (Count 6).[2] In the new indictment, the State removed the language alleging that Wyatt struck the victim against a hard object. Count 1, felony murder based on aggravated battery, and Count 4, aggravated battery, allege that Wyatt rendered useless the brain of Andrea, a child, "by causing bleeding to and damage to her brain." Count 2, felony murder based on aggravated assault, alleges the Wyatt caused the death of Andrea "by causing bleeding to and damage to the brain," and Count 5, aggravated assault, alleges that Wyatt assaulted Andrea, a child, "with an object the exact nature of which is unknown to the members of the Grand Jury, which, when used offensively against another person is likely to result in serious bodily injury." Count 3 charges felony murder based on cruelty to children in the first degree by failing to seek medical attention for Andrea, which is the offense charged in Count 6.

Wyatt filed special demurrers to Counts 1, 2, 4, and 5, the charges related

---

[2] The State then moved to nolle prosse the first indictment, which was done on August 15, 2013.

to aggravated battery and aggravated assault. On August 19, 2013, the trial court held a hearing, at which the State introduced, without objection, reports from the hospitals where the victim was treated and from the medical examiner. The hospital reports showed that the doctor at the local hospital to which Andrea was first taken noticed extensive bruising on several parts of her body and ordered a head CT scan, which showed a large subdural hematoma. Andrea was then flown to a hospital in Atlanta, where doctors performed emergency surgery, which proved to be unsuccessful; Andrea was pronounced dead three days later. The medical examiner's report concluded that the cause of death was "closed head trauma with subdural hematoma, delayed effects" and that the manner of death was homicide. The report also said that "surgical intervention, producing associated hemorrhage within the scalp, confounds the assessment of the presence or absence of an impact site."

At the demurrer hearing, the State argued that the indictment was sufficiently specific and that it was permitted to allege in Count 5 that the object with which Wyatt assaulted Andrea was unknown because her head could have been hit by "the toilet or the tub or by the defendant's own hand." On August 23, 2013, the trial court summarily granted Wyatt's special demurrers to Counts

1, 2, 4, and 5. The State requested a certificate of immediate review, which the trial court granted, and then filed an application for interlocutory appeal, which this Court granted to consider whether those four counts as indicted were sufficient to put Wyatt on notice as to what he must defend against at trial.[3]

2.     "Every indictment of the grand jury which states the offense in the terms and language of this Code or so plainly that the nature of the offense charged may easily be understood by the jury shall be deemed sufficiently technical and correct." OCGA § 17-7-54. Thus, an indictment "couched in the language of the statute alleged to have been violated" is not subject to a general demurrer. Carter v. State, 252 Ga. 502, 504 (315 SE2d 646) (1984). Counts 1, 2, 4, and 5 track the statutory language for the crimes they allege, so they are not subject to a general demurrer, as Wyatt acknowledges.

---

[3] Wyatt also filed special and general demurrers to Counts 3 and 6, but the trial court did not hear argument or rule on those demurrers. Wyatt additionally filed a "Special Demurrer – Rule of Lenity," requesting that the trial court "correct" the indictment by changing the crimes charged in Counts 1, 2, 3, 4, and 6 to contributing to the deprivation of a minor. The court heard argument on this demurrer at the hearing, but did not rule on it. When this Court granted the State's interlocutory application, it was unclear from the application materials if the trial court had considered Wyatt's rule-of-lenity demurrer in rendering the summary order that the State was seeking to appeal. We therefore posed a question on this issue, and the parties have briefed it. With the full record now available, however, the demurrer hearing transcript reveals that the trial court explicitly declined to rule on Wyatt's "Special Demurrer – Rule of Lenity." Accordingly, that demurrer is not properly before us for decision. See Titelman v. Stedman, 277 Ga. 460, 461 (591 SE2d 774) (2003) ("'In the absence of a judgment in writing no question for decision is presented to the appellate court.'" (citation omitted)).

An indictment that is not subject to a general demurrer may, however, be subject to a special demurrer, which challenges the specificity of the indictment. See Lowe v. State, 276 Ga. 538, 539 (579 SE2d 728) (2003).

> "The true test of the sufficiency of an indictment to withstand a special demurrer 'is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'"

State v. English, 276 Ga. 343, 346 (578 SE2d 413) (2003) (citations omitted). See also Green v. State, 292 Ga. 451, 452 (738 SE2d 582) (2013) ("The purpose of an indictment is to inform the accused of the charges against him and to protect the accused against another prosecution for the same offense.").

Wyatt's special demurrers are based on his contention that the aggravated assault accusation, which states that the object used to assault the victim is unknown and is silent at to how the object was used, and the aggravated battery accusation, which is silent as to the way in which the battery was committed, do not allow him to prepare for trial on those charges and their corresponding felony murder charges. We will consider each felony murder count and its

8

underlying felony count together, and examine whether the entirety of the indictment provides sufficient detail about the crimes Wyatt is accused of committing. See Hester v. State, 283 Ga. 367, 368 (659 SE2d 600) (2008) ("[The rule that] each count must be wholly complete within itself applies only to the essential elements of the crime, and not to the form of the indictment or to factual details alleged therein. The indictment must be read as a whole." (citations omitted)).

(a)    Aggravated Assault

Count 5 charges Wyatt with aggravated assault, alleging that on April 11, 2009, he "unlawfully ma[d]e an assault [on Andrea] with an object the exact nature of which is unknown to the members of the Grand Jury, which when used offensively against another person is likely to result in serious bodily injury." Count 2, charging felony murder based on aggravated assault, adds that the assault "cause[d] bleeding to and damage to [Andrea's] brain." Wyatt argues that the lack of detail about the dangerous object he allegedly used and the manner in which he used it leaves him without adequate notice of what he must defend against at trial. The State argues in response that the indictment is as specific as it can be because the nature of Andrea's head wounds and the surgery

9

performed in the attempt to save her life make it impossible to determine the exact nature of the object that inflicted her injuries. We conclude that there is no basis under our precedent to grant a special demurrer on Counts 2 and 5.

Wyatt is charged with aggravated assault under OCGA § 16-5-21 (a) (2), which is defined as an assault "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." An indictment charging aggravated assault must allege the element that aggravates the crime above a simple assault, in this case the use of a deadly weapon or dangerous object. See Simpson v. State, 277 Ga. 356, 358 (589 SE2d 90) (2003) ("[A]n indictment for aggravated assault should . . . allege the aggravating aspect of the simple assault."). See also Lizana v. State, 287 Ga. 184, 185-186 (695 SE2d 208) (2010).

This Court has held, however, that an indictment under § 16-5-21 (a) (2) "need not . . . specify the manner in which the defendant committed the simple assault, when that is a lesser included offense within the greater offense of aggravated assault." Simpson, 277 Ga. at 358. See also Chase v. State, 277 Ga. 636, 638 (592 SE2d 656) (2004) ("It is not necessary that an indictment

10

charging a defendant with aggravated assault specify the manner in which the simple assault was committed, but it must set forth the aggravating aspect."). Likewise, the indictment need not say how the defendant used the weapon or object that aggravated the assault. See, e.g., Arthur v. State, 275 Ga. 790, 791 (573 SE2d 44) (2002) (affirming the denial of a special demurrer because, "by alleging [the defendant's] general use of a gun, the State apprised him that he would have to defend against all of the possible ways of committing the assault that he himself had admitted in his statement"); Watson v. State, 178 Ga. App. 778, 780 (344 SE2d 667) (1986) (concluding that an indictment charging that the defendant assaulted the victim "with a metal pipe," without specifying how the pipe was used, was sufficient).[4]

---

[4] We recognize that this Court has on two occasions treated the specificity required in an indictment for assault with intent to murder differently, where the assault at issue was allegedly committed with an item that "may be used for the destruction of human life in a great variety of ways." Johnson v. State, 90 Ga. 441, 446 (16 SE 92) (1892) (alleged assault with intent to murder using poison). See also Walker v. State, 124 Ga. 440, 441-442 (52 SE 738) (1905) (alleged assault with intent to murder using "pieces of iron"). The Court has specifically declined, however, to extend those holdings to indictments on other charges or with other dangerous items. See Sims v. State, 118 Ga. 761, 761 (45 SE 621) (1903) ("The rules laid down . . . in Johnson v. State . . . , in reference to the requirements to be met in framing in indictment for assault with intent to murder, have never, either at common law or in this State, been applied to indictments for assault and battery."). See also Arthur, 275 Ga. at 791 (distinguishing between the use of a poison and a handgun because "[w]hen the deadly weapon is a handgun, the assault generally can be perpetrated in only a limited number of ways); Walker v. State, 141 Ga. 525, 525 (81 SE 44) (1914) (declining to extend Johnson to an indictment for murder); Wood v. State, 69 Ga. App. 450, 452 (26 SE2d 140) (1943) (declining to extend Walker, 124 Ga. 440, to an indictment for assault and battery).

11

Furthermore, while an indictment under OCGA § 16-5-21 (a) (2) must allege that the assault was committed with a deadly weapon or an object that was likely to or actually did result in serious bodily injury, the indictment is not required to identify the exact weapon or object used if the circumstances of the case do not allow such specificity. We have held that alleging that the object used to commit the aggravated assault is unknown can be "sufficiently definite to advise [the defendant] of what he must be prepared to confront." Johnson v. State, 286 Ga. 432, 433-434 (687 SE2d 833) (2010) (involving an indictment alleging that the defendant assaulted the victim with "hands and an object, the description of which being unknown"). That holding is consistent with cases involving indictments for malice murder, where we have explained that "'[a]n indictment failing to specify the cause of death is sufficient when circumstances of the case will not admit of greater certainty in stating the means of death.'" Hinton v. State, 280 Ga. 811, 815-816 (2006) (quoting Phillips v. State, 258 Ga. 228, 228 (1988)) (punctuation omitted). "'The state cannot be more specific than the evidence permits.'" Eberhardt v. State, 257 Ga. 420, 421 (359 SE2d 908) (1987) (citation omitted).

Wyatt suggests that the first indictment's allegation that he caused

Andrea's injuries by striking her "against a hard object" demonstrates that the evidence allows the State to be more specific in identifying the object used. But "hard object" was hardly a precise description in the first place, and the State and the grand jury were not precluded from determining, after re-examining the evidence, or obtaining additional evidence, that the specific object used to damage Andrea's brain cannot be proved. In that case, alleging that the object which caused her fatal injuries is "unknown" is more accurate and provides better notice of how the State plans to prove the aggravated assault at trial.

Based on the indictment he will defend against at trial, Wyatt knows that the State intends to prove that on April 11, 2009, a day when Wyatt admits Andrea was in his custody, he used an object that is likely to result in serious bodily injury when used offensively to fatally injure her by causing damage to her brain. Wyatt also knows that the State claims not to know – and thus does not intend to prove – what specific object he used to assault Andrea. That is sufficient notice for Wyatt to prepare a defense to the charges of aggravated assault and felony murder based on aggravated assault – notice that may be supplemented, of course, by the pretrial discovery he receives and any investigation his counsel conducts. If at trial the State proves the case

13

differently, definitively specifying the object used to assault Andrea, then Wyatt might raise a claim of fatal variance between the allegations in the indictment and the proof at trial, but that is a different claim than the one now before us. See Haley v. State, 289 Ga. 515, 529 (712 SE2d 838) (2011); Roscoe v. State, 288 Ga. 775, 776 (707 SE2d 90) (2011). For these reasons, the trial court erred in granting Wyatt's special demurrers as to Counts 2 and 5.

(b)    Aggravated Battery

Count 4 alleges that on April 11, 2009, Wyatt "unlawfully and maliciously caus[ed] bodily harm to [Andrea] . . . by rendering useless a member of her body, to wit: her brain, by causing bleeding to and damage to the brain." Count 1 charges felony murder based on that aggravated battery. Wyatt contends that the State should have alleged the acts that constituted the aggravated battery, not just the resulting injury. The State responds that, just as it cannot specify the object used to assault Andrea, it cannot specify the manner in which Wyatt committed aggravated battery against her, because the nature of her brain injuries and the attempts to treat them obscured the source of those injuries. We conclude that even if the State could determine the specific manner in which the aggravated battery was perpetrated, it was not required to include that detail in

14

the indictment.

Aggravated battery is defined as "maliciously caus[ing] bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof." OCGA § 16-5-24 (a). The manner in which the defendant caused one of these three kinds of bodily harm is not an element of the offense, but Wyatt maintains that the indictment must nevertheless allege the way in which he rendered Andrea's brain useless so that he can adequately prepare his defense.

As best we can tell, Georgia's appellate courts have never before decided whether the manner of an aggravated battery must be alleged in an indictment in order to survive a special demurrer.[5] Long ago, however, this Court

---

[5] The common-law analogue of aggravated battery was the crime of "mayhem." See Mitchell v. State, 238 Ga. 167, 167 (231 SE2d 773) (1977). The only reported Georgia case on how mayhem had to be charged appears to be Kitchens v. State, 80 Ga. 810 (7 SE 209) (1888), which addressed the injury element of the crime, holding that "[t]he indictment was not bad because the nature and character of the injury were not more particularly described." Id. at 812. The Missouri Supreme Court has held, consistent with the conclusion we reach as to aggravated battery, that:

> Neither is the indictment [under the Missouri mayhem statute] bad because it does not give a description of the character of sulphuric acid, or state how it was used, whether by throwing it in [the victim's] face or throwing her into the acid. The manner of applying the sulphuric acid to her eyes was entirely immaterial so long as by this means he put out her eyes feloniously and with malice aforethought. We think the indictment fully advised the defendant of the charge he was to meet. The

15

addressed the level of specificity required in an indictment for the lesser

included offense of battery, concluding that allegations of battery need not be

specific:

> [A]n indictment for assault and battery is expressed in more general terms, and simply alleges that on a given day, in the county, the defendant, with force and arms, committed an assault upon another named person, and then and there unlawfully beat, bruised and ill-treated him. The exact manner and means of the battery are left to be developed by the evidence. A battery may be committed in ways innumerable, and the indictment will apply to one way as well as another.

Hill v. State, 63 Ga. 578, 583 (1879). See also Bard v. State, 55 Ga. 319, 320

(1875) (explaining that for purposes of an indictment for assault or assault and

battery, allegations that the defendant "with force and arms, and a knife, a

weapon likely to produce death, in and upon [the victim] . . . did make an

assault," provided "a full description of [the] offense").[6]

---

industry of counsel has not furnished us with any decision of any court of last resort, or any reputable text-writer, which sustains this contention that this indictment was and is not sufficient.

State v. Nerzinger, 119 SW 379, 383 (Mo. 1909).

[6] "Assault and battery" was the common-law label for the crime now known as just "battery" or "simple battery." See OCGA § 16-5-23.1 (a) (defining "battery" as "intentionally caus[ing] substantial physical harm or visible bodily harm to another"); OCGA § 16-5-23 (a) (defining simple battery" as "(1) [i]ntentionally mak[ing] physical contact of an insulting or provoking nature with the person of another; or (2) [i]ntentionally caus[ing] physical harm to another"). Battery is a lesser included offense of aggravated battery, lacking the elements of malice and more serious injury. See

16

Following Hill and Bard, the Court squarely held that an indictment for assault and battery that alleged merely that the accused "did make an assault, and . . . unlawfully and with force and arms did beat" the victim was not deficient for failing to "specify any acts constituting the assault or how or in what manner the beating was done, whether with the hand, fist, or weapon." Sims v. State, 118 Ga. 761, 761 (45 SE 621) (1903). The Court explained that the indictment

> charged the offense substantially in words which are found in approved common-law precedents as well as in precedents which have been approved and followed in this country for more than a hundred years. This form of indictment for assault and battery was adopted by our criminal pleaders in the early history of this State, and has been uniformly followed to the present time.

Id. at 761-762 (citations omitted). Hill was cited more recently by the Court of Appeals, which reiterated that "an indictment for battery has been held not to be required to allege the exact manner and means of the battery." J.A.T. v. State, 133 Ga. App. 922, 925 (212 SE2d 879) (1975).

---

Christensen v. State, 245 Ga. App. 165, 166 (537 SE2d 446) (2000) ("The offense of "aggravated battery" . . . requires additional proof of (i) malice, and (ii) bodily harm which disfigures or renders a member of the victim's body useless."). See also Pope v. State, 286 Ga. 1, 3 (685 SE2d 272) (2009) (defining the malice required for aggravated battery as "'an actual intent to cause the particular harm produced . . . without justification or excuse'" (citation omitted)).

17

In accordance with this precedent, the indictment's allegation that Wyatt "unlawfully and maliciously cause[d] bodily harm" to Andrea, particularly when read in conjunction with the charge of aggravated assault, provided all the detail required to charge battery, and we see no reason to require a charge of aggravated battery to detail the manner of the underlying battery with greater specificity. The element that distinguishes *aggravated* battery is not the *way* the battery was committed, but rather the resulting *injury*, and here the indictment properly identified the injury by alleging that Wyatt caused bleeding and damage to Andrea's brain, rendering it useless. See McKissic v. State, 201 Ga. App. 525, 526 (411 SE2d 516) (1991) ("The focus of OCGA § 16-5-24 (a) is upon whether the defendant has maliciously caused the victim to suffer an enumerated physical injury, and the means employed so as maliciously to cause such an injury is not a mitigating factor."). As with aggravated assault, what must be specified is the fact that aggravates the crime. See Chase, 277 Ga. at 638; Simpson, 277 Ga. at 358.[7]

---

[7] The State may of course *choose* to allege the manner in which the aggravated battery was committed with greater specificity, and in such cases a special demurrer could be easily denied. See English, 276 Ga. at 347 (affirming the denial of a special demurrer where the indictment "detail[ed] how the aggravated battery was accomplished and the specific injuries that were sustained"). The State, however, must take care to allege only those details that it is prepared to prove at trial. See

18

Thus, like the counts alleging aggravated assault, the counts alleging aggravated battery sufficiently apprise Wyatt of what he must defend against at trial. He knows that the State will contend that he maliciously caused damage to Andrea's brain on April 11, 2009, and that such damage rendered her brain useless; under the circumstances of this case, he is entitled to no more.[8] Accordingly, the trial court also erred in granting the special demurrers as to Counts 1 and 4.

3.    Wyatt also argues that if the State contends that the object used in the aggravated assault or the means by which the aggravated assault and aggravated battery were committed are unknown, it must support those

---

Calhoun v. State, 318 Ga. App. 835, 838 (734 SE2d 809) (2012) ("'No averment in an indictment can be rejected as surplusage which is descriptive either of the offense or the manner in which it was committed. All such averments must be proved as laid, or the failure to prove the same as laid will amount to a variance.'" (citation omitted)); Wallin v. State, 305 Ga. App. 663, 664 (700 SE2d 837) (2010) (reversing a battery conviction when the trial court failed to instruct the jury that it could find the defendant guilty of battery only by choking or biting the victim, as alleged in the indictment, when the evidence supported a finding that the defendant also beat the victim with a post and struck him with a fist).

[8] Wyatt cites D'Auria v. State, 270 Ga. 499 (512 SE2d 266) (1999), but this case is different from the peculiar circumstances there. In D'Auria, the indictment charged the defendant with committing sexual battery "by making contact with the intimate body parts" of the victim. Id. at 500. That would generally be sufficient, but because the defendant was the victim's physician and had her consent to some physical contact, the Court held that the failure of the indictment to specify the manner of the touching or the body parts touched left the defendant unable to prepare for trial because he was "unable to determine which of his acts [were] alleged to be criminal in nature." Id. at 500-501. It should not be a mystery to Wyatt that he will be held to account at trial for any acts that he committed maliciously on April 11, 2009, which caused damage to Andrea's brain.

19

contentions with evidence at a pretrial hearing, which Wyatt says the State did not do at the demurrer hearing. Because we have held in Division 2 above that an indictment need not allege the manner of an aggravated assault or aggravated battery to survive a special demurrer, such an evidentiary hearing clearly was not required on that issue; even if the State knows the way in which those crimes were committed, it need not provide that information in the indictment or at a demurrer hearing to prevail.

As discussed in Division 2 (a), however, the State is required to allege the use of a deadly weapon or other dangerous object when charging aggravated assault under OCGA § 16-5-21 (a) (2). But that requirement does not entitle the defendant to a pretrial evidentiary hearing if the indictment also alleges that the weapon or object used is unknown. Wyatt cites several cases in which the Court of Appeals has held that when an indictment alleges that a crime was committed during a date range rather than specifying the exact date, the State must prove at an evidentiary hearing that the accusation cannot be more specific. See, e.g., Blanton v. State, 324 Ga. App. 610, 614-618 (751 SE2d 431) (2013); Blackmon v. State, 272 Ga. App. 854, 854-855 (614 SE2d 118) (2005). See also State v. Layman, 279 Ga. 340, 340-341 (613 SE2d 639) (2005) ("[W]here the State can

show that the evidence does not permit it to allege a specific date on which the offense occurred, the State is permitted to allege that the crime occurred between two particular dates."). The basis for these decisions is the statutory requirement that the time the offense was committed be alleged "with sufficient certainty" in all indictments. OCGA § 17-7-54 (a). But even assuming arguendo the soundness of this practice in the context of date allegations, we will not extend the practice as Wyatt suggests because no such statutory directive applies to specifying the deadly weapon or dangerous object used in an aggravated assault.[9]

Indeed, the only way for the State to truly *prove* that it cannot specify the weapon or object the defendant used would be to present *all* of the evidence the State has in order to show that the evidence does not allow identification of the weapon or object – that is, to make a full presentation of the State's evidence before actually trying the case. Nothing in our cases dealing with material elements that are alleged to be unknown has indicated that we would impose such an impractical requirement. See Gardner v. State, 216 Ga. 146, 146 (1960)

---

[9] It is worth noting that if the State does allege a specific date, "the State is not restricted at trial to proving that an offense occurred on the date alleged in the indictment when the indictment does not specifically allege that the date of the offense is material." Layman, 279 Ga. at 341.

(not requiring a pretrial evidentiary hearing in an aggravated assault case where the weapon used was alleged to be unknown); Johnson v. State, 186 Ga. 324, 333 (1938) (same). See also Hinton, 280 Ga. at 815-816 (same where the indictment alleged that the cause of death was unknown); Phillips, 258 Ga. at 228 (same). Moreover, a requirement of pretrial proof would contradict the principle that in reviewing demurrers, the allegations in the indictment are taken as true, which would include an allegation that a matter was unknown to and thus unable to be specified by the grand jury. See Lowe v. State, 276 Ga. 538, 539 (579 SE2d 728) (2003) (explaining that the court must take the allegations in an indictment as true when evaluating a demurrer). See also Miller v. State, 6 NE2d 948, 949 (Ind. 1937) ("The sufficiency of the facts before the grand jury to justify the charges in the indictment cannot be questioned, and the recitals concerning knowledge, or want of knowledge, of the names of parties or other matters must be accepted as true.").

If the State offers evidence at trial that definitively identifies the specific object that Wyatt used in the alleged aggravated assault – that is, if the State deviates from the representation made in its brief here that "it is impossible to define with more certainty the object or objects [Wyatt] used to kill [Andrea]"

22

– Wyatt's recourse will be to argue that the indictment's allegation that the object was unknown prevented him from adequately preparing a defense to the evidence actually presented by the State and thus there was a fatal variance from the indictment. See, e.g., Haley, 289 Ga. at 529; Roscoe, 288 Ga. at 776. Or, of course, the jury could decide that the State did not prove the crimes as charged beyond a reasonable doubt and acquit Wyatt. But those are matters for trial, not a special demurrer.

Judgment reversed. All the Justices concur.