303 Ga. 643
FINAL COPY

S18A0333.  SMITH v. THE STATE.

GRANT, Justice.

Deion Smith was found guilty of malice murder and arson in connection with the violent death of 15-year-old Jasmine Moore.[1]  Smith now appeals, arguing that his trial counsel was ineffective for failing to challenge the sufficiency of the indictment and failing to thoroughly cross-examine Smith's co-defendant, Tyberius Murchinson.  Because we find that Smith's trial counsel was not constitutionally ineffective, we affirm.

---

[1] Moore was killed on August 9, 2009.  On August 20, 2014, Smith and Tyberius Murchinson were indicted by a Bacon County grand jury for malice murder, felony murder predicated on aggravated assault, and arson in the first degree.  Murchinson pled guilty to aggravated assault and arson before trial.  At the conclusion of a trial held April 19-20, 2016, the jury found Smith guilty of all three counts of the indictment.  The trial court sentenced Smith to life in prison for murder and 15 years consecutive for arson.  Although the trial court purported to merge the felony murder count with the malice murder count, the felony murder count actually was vacated by operation of law.  See *McClendon v. State*, 299 Ga. 611, 618-619 (791 SE2d 69) (2016).  On April 25, 2016, Smith filed a motion for new trial, which he amended on July 14, 2017 through new counsel.  After a hearing, the trial court denied the motion for new trial on July 27, 2017.  Smith filed a timely notice of appeal on August 24, 2017, and the case was docketed in this Court for the term beginning in December 2017 and submitted for a decision on the briefs.

Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. Shortly before her death, Moore told her cousin, Murchinson's sister Teyonka, that she might be pregnant with Smith's child. At the time, Teyonka herself was pregnant by Smith. After Smith became aware that Moore might be pregnant, he discussed the situation with Murchinson, telling him that he wanted to kill Moore.

At the time of the murder, Moore lived with her mother. On the evening of August 8, 2009, Moore's mother left their home at around 9:15 p.m. to go to work. Moore's mother had just recently begun letting Moore stay home alone while she worked the night shift, on the condition that Moore was not to open the door for anyone.

Sometime after Moore's mother left for work, Smith and Murchinson met at Smith's home. They gathered a kitchen knife, a claw hammer, and cloth gloves for each of them, and walked to Moore's house. Smith carried the hammer, and Murchinson carried the knife. When they arrived at Moore's house, the front door was locked and Moore did not answer the door, so they left and went to a nearby Huddle House. Cell phone records introduced at trial showed several texts between Smith and Moore between 11:08 p.m. and 11:45

p.m., in which Smith told Moore that he and Murchinson were coming back and to open the front door. Moore texted that the front door was open, and Smith responded, confirming that they were on their way. Smith sent no texts between 11:46 p.m. and 12:15 a.m., and although he resumed texting at 12:16 a.m., he never again attempted to contact Moore. The last text message Moore ever sent was to Smith at 11:45 p.m. on August 8, 2009, acknowledging that Smith was on his way to her house.

A witness encountered Smith and Murchinson walking between the Huddle House and Moore's home shortly before midnight. She recognized the boys and greeted them. They seemed startled to see her, but returned her greeting and kept walking.

Upon arrival at the Moores' home, Smith went with Moore to Moore's bedroom, while Murchinson remained in the front of the house. After a while, Smith began beating Moore with the hammer, and Murchinson heard Moore exclaim that her head was bleeding. Murchinson stood in the hallway and listened to Moore screaming as Smith continued to hit her with the hammer, following her to the bedroom doorway where she finally fell. Smith handed Murchinson the hammer, and Murchinson hit Moore with the hammer on her

head and upper body as she lay on the floor, to make sure that she was dead. Both boys wore the cloth gloves they had brought with them.

After Moore was dead, Smith and Murchinson poured bleach and dumped paper trash from a wastebasket on her body.  Smith went to the stove, lit a piece of paper, and set the debris on top of Moore on fire.  When a smoke alarm near her body began going off, one of the two pulled it out of the ceiling. Smith and Murchinson dumped the knife, hammer, and Moore's cell phone in a storm drain near Moore's house and went back to Smith's house to shower and burn their clothing in a fire barrel.

Later that morning, Moore's mother returned home from work to find the house full of smoke.  She called out for Moore and found her body at the end of the hall near her bedroom door.  An autopsy revealed that Moore had at least 18 blunt force injuries to the face and head, consistent with being hit with a hammer; at least eight sharp force injuries to the head, consistent with being cut with a knife; and multiple smaller blunt and sharp force injuries, including defensive injuries to the arms and hands.  The autopsy also showed that Moore had been killed before her body was burned—and that she was not in fact pregnant at the time of her death.

Although Smith and Murchinson were questioned during the initial murder investigation, both denied any involvement in the crime. Smith gave authorities his cell phone number, and cell phone records revealed the text messages between Smith and Moore on the night of the murder. There was not enough evidence to obtain warrants, however, and the case went unsolved for almost five years.

In June 2014, after attending a three-night Baptist revival, Murchinson turned himself in to the Alma Police Department and confessed his role in Moore's murder. The storm drain that Murchinson identified was searched, and Moore's cell phone and a kitchen knife were discovered inside the drain about a foot apart. Smith and Murchinson were arrested and indicted for malice murder, felony murder, and first degree arson. Days before trial, Murchinson pled guilty to aggravated assault and arson and was sentenced to a total of 30 years in prison. As part of the plea agreement, he testified for the State at Smith's trial.

Although Smith does not challenge the legal sufficiency of the evidence supporting his convictions, we have reviewed the record according to our usual practice in murder cases and conclude that the evidence introduced at trial and summarized above was sufficient to authorize a rational trier of fact to find

Smith guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

## II.

In his sole enumeration of error, Smith contends that his trial counsel provided constitutionally ineffective assistance in two ways. To prevail on his ineffective assistance claims, Smith must show both that his lawyer's performance was professionally deficient and that he was prejudiced as a result. See *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). In meeting his burden on the first prong, deficient performance, Smith must show that his trial counsel acted "in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms." *Aikens v. State*, 297 Ga. 229, 231 (773 SE2d 229) (2015) (citing *Strickland*, 466 U. S. at 687-688). Smith must overcome the "strong presumption" that counsel's performance fell within "the wide range of reasonable professional assistance," and that counsel's decisions were made "in the exercise of reasonable professional judgment." *Strickland*, 466 U. S. at 689-690; see *Ford v. State*, 298 Ga. 560, 566 (783 SE2d 906) (2016).

To satisfy the second prong, prejudice, Smith must show a reasonable probability that, but for counsel's deficiency, the outcome of the trial would have been different. See *Strickland*, 466 U. S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. In evaluating a claim of ineffective assistance of counsel, we need not address both components of the *Strickland* inquiry if the defendant fails to make a sufficient showing on one. See *Propst v. State*, 299 Ga. 557, 565 (788 SE2d 484) (2016). The burden of proving ineffective assistance is a heavy one, see *Lupoe v. State*, 300 Ga. 233, 240 (794 SE2d 67) (2016), and Smith cannot meet it with regard to either of his claims.

A. Smith first claims that his trial attorney provided ineffective assistance in failing to challenge the sufficiency of the indictment, presumably by filing a special demurrer before trial. Smith argues that the indictment was unconstitutionally vague because the murder charges alleged that Smith and Murchinson killed Moore by "striking her with a hammer" and "stabbing her with a knife," without specifying which of them used the hammer and which one used the knife. This claim is without merit.

Count 1 of the indictment, which charged Smith and Murchinson with the malice murder of Moore, read as follows:

[The Grand Jurors,] In the name and behalf of the citizens of Georgia, charge and accuse DEION SMITH and TYBERIUS MURCHINSON with the offense of MALICE MURDER, For that the said accused on the 9th day of August, in the year Two Thousand and Nine, in the County of Bacon, did then and there unlawfully and with malice aforethought, cause the death of Jasmine Moore, a human being, by striking her with a hammer and stabbing her with a knife, in violation of OCGA § 16-5-1 (a), and did intentionally aid, abet, advise, encourage, and counsel one another in the commission of said crime, Contrary to the laws of said State, the good order, peace, and dignity thereof.

The language of the felony murder count was substantially identical to the above, except that it charged Smith and Murchinson with the offense of felony murder in that they caused Moore's death "irrespective of malice" while in the commission of the felony offense of aggravated assault "by striking her with a hammer, an object which, when used offensively against a person is likely to or actually does result in serious bodily injury, and by stabbing her with a knife, a deadly weapon, in violation of OCGA § 16-5-1 (c)." At the motion for new trial hearing, Smith's trial attorney testified that he reviewed the indictment and believed that it was not vague, overbroad, or subject to dismissal because it was adequate to provide notice of what Smith was accused of doing.

An indictment charging the violation of a statutory offense "shall be deemed sufficiently technical and correct" if it describes the offense in the language of the statute "or so plainly that the nature of the offense charged may

easily be understood by the jury[.]" OCGA § 17-7-54 (a); see *State v. Wyatt*, 295 Ga. 257, 260 (759 SE2d 500) (2014). And an indictment comports with constitutional due process and is sufficient to withstand a special demurrer if it contains the elements of the offense charged, sufficiently informs the defendant of what he must be prepared to defend against, and in the event of another prosecution for the same offense, enables the defendant to determine accurately whether he may plead a former conviction or acquittal. See *Wyatt*, 295 Ga. at 260; *State v. Grube*, 293 Ga. 257, 258-260 (744 SE2d 1) (2013); *Arthur v. State*, 275 Ga. 790, 791 (573 SE2d 44) (2002) ("The true test of the sufficiency of an indictment is not whether it could be made more certain and definite, but whether it contains the elements of the offense charged, apprises the accused of what he must be prepared to defend against, and protects against double jeopardy."). Where these requirements are met, the indictment need not specify "the role each co-indictee played in the commission of the crime." *Jones v. State*, 289 Ga. 111, 116 (709 SE2d 773) (2011).

Here, each of the murder counts tracked the language of the applicable statute and alleged the essential elements of the offense charged. See OCGA §§ 16-5-1 (a) (malice murder); 16-5-1 (c) (felony murder). The indictment provided the date and county of the offense and the identity of the victim, and

in terms clear enough to be easily understood by the jury and by the accused, charged Smith with acting in concert with Murchinson to kill Moore by beating and stabbing her to death. This information adequately informed Smith of the crimes with which he was charged so that he could prepare a defense and safeguard against double jeopardy. The indictment was thus sufficient to satisfy due process and withstand a general or special demurrer, and Smith's trial counsel was not constitutionally ineffective for failing to challenge it. See *Wyatt*, 295 Ga. at 260; *Jones*, 289 Ga. at 116; *Moss v. State*, 298 Ga. 613, 617 (783 SE2d 652) (2016) ("[T]he failure to make a meritless motion or objection does not provide a basis upon which to find ineffective assistance of counsel." (citation and punctuation omitted)).

B. Smith next contends that his trial counsel was ineffective for failing to cross-examine Murchinson adequately regarding his motivation for testifying for the State. Smith claims that Murchinson's testimony that he "thought [he] could've gotten out better" from his plea deal than the 30-year sentence he received showed that his motivation for testifying was to receive the lightest sentence possible by implicating Smith as the main culprit. Smith argues that his trial attorney failed to ask sufficiently probing questions to illuminate Murchinson's ulterior motive for the jury.

On direct examination, Murchinson testified about his plea bargain, disclosing that he had pled guilty to aggravated assault and arson several days before trial and received a sentence of 30 years in prison. Murchinson further acknowledged that his truthful testimony at trial was a condition of his plea agreement. When asked why he pled guilty, Murchinson testified, "Like I say, my involvement doesn't leave me innocent. I thought I could have gotten out better but . . . I'm still not innocent." Smith's trial counsel cross-examined Murchinson about his plea deal and his statement that he "thought [he] could have gotten out better," asking, "Well, how much better deal did you want?" to which Murchinson responded, "It wasn't up to me. It was up to the District Attorney." Counsel continued to press, asking, "Well, you didn't want life without parole, did you?" Murchinson answered, "No, I didn't want that either." Counsel then cross-examined Murchinson further on the inconsistencies in his statements to police and the multiple details that Murchinson claimed to have forgotten at the time of trial. At the motion for new trial hearing, Smith's trial attorney testified that he cross-examined Murchinson as thoroughly as possible, based on counsel's then 37 years of experience trying criminal cases.

"[D]ecisions about what questions to ask on cross-examination are quintessential trial strategy and will rarely constitute ineffective assistance of counsel. In particular, whether to impeach prosecution witnesses and how to do so are tactical decisions." *Edwards v. State*, 299 Ga. 20, 24 (785 SE2d 869) (2016). Smith has failed to show that his trial counsel's cross-examination of Murchinson constituted deficient performance, and his claim on this issue therefore fails. See id.; *Romer v. State*, 293 Ga. 339, 344 (745 SE2d 637) (2013).

Judgment affirmed. All the Justices concur.

Decided May 7, 2018.

Murder. Bacon Superior Court. Before Judge Horkan, Senior Judge.

L. Michael Johnson, for appellant.

George E. Barnhill, District Attorney, Alexander J. Markowich, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General, for appellee.