S02A1808, S02X1809. THE STATE v. ENGLISH; and vice versa.
(578 SE2d 413)

HINES, Justice.

Adrian English was charged in a seven-count indictment in connection with the death of his infant son. English was charged with: Count I — malice murder; Count II — felony murder while in the commission of cruelty to children in the first degree; Count III — felony murder while in the commission of aggravated battery; Count IV — felony murder while in the commission of aggravated assault; Count V — cruelty to children in the first degree; Count VI — aggravated battery; and Count VII — aggravated assault. English filed general demurrers to Counts III, IV, VI, and VII and special demurrers with regard to all counts of the indictment.

Following a hearing, the trial court found that English's general demurrers were without basis and denied them. However, the court granted the special demurrers with regard to Counts VII (aggravated assault) and IV (felony murder based on that aggravated assault) and dismissed those charges; it denied the special demurrers as to the remaining counts. In Case No. S02A1808, the State appeals the granting of English's special demurrers to Counts IV and VII of the indictment. In Case No. S02X1809, English files a cross-appeal from the denial of his special demurrers to the remaining counts in the indictment and from the trial court's denial of bail.

*Case No. S02A1808*

1. Citing *Smith v. Hardrick*, 266 Ga. 54 (464 SE2d 198) (1995), the trial court granted English's special demurrers to Counts VII (aggravated assault) and IV (felony murder based on that aggravated assault), after finding that the charges were not sufficiently specific in their description of the manner in which the assault occurred. But this was error because the charges at issue in the present indictment are not fatally flawed as was the aggravated assault charge in *Smith v. Hardrick*.

OCGA § 17-7-54, setting forth the form of indictment by the grand jury, provides that an indictment is to be deemed "sufficiently technical and correct" if it "states the offense in the terms and language of this Code or so plainly that the nature of the offense charged may be easily understood by the jury." And as this Court stated in *Smith v. Hardrick*, the fundamental Sixth Amendment principle that criminal defendants must be informed of the nature and cause of the charges against them requires that "a criminal indictment which does not recite language from the Code must allege every essential element of the crime charged," and "each count set forth in an indictment must be wholly complete within itself, and plainly, fully, and

distinctly set out the crime charged in that count." Id. at 54-55 (1).

The indicted charge of aggravated assault in *Smith v. Hardrick* accused Hardrick "with the offense of AGGRAVATED ASSAULT for [he] did make an assault upon [the victim] by placing his hands around [her] neck and using his hands to apply pressure to her neck contrary to the law[ ]." Id. at 54. It simply failed to set forth the elements of aggravated assault. See OCGA § 16-5-21.[1] That is, it did not state whether Hardrick "placed his hands around the victim's neck in an attempt to use them as a deadly weapon, or in an attempt to rape, rob or murder the victim." *Smith v. Hardrick* at 56 (3). Nor did it indicate that Hardrick intended to inflict a violent injury or place the victim in reasonable apprehension of being violently injured. Id. Thus, if Hardrick pled guilty to the allegations in the indictment, he would not be admitting an aggravated assault. Id. That is not the situation with regard to the allegation of aggravated assault by English against his infant son.

Count VII in the indictment against English charges that he

> did unlawfully make an assault upon the person of Hunter Alexander English, his son, with an object which, when used offensively against a person, is likely to and did result in serious bodily injury; said object being said accused's hands; by shaking Hunter Alexander English with his hands and by causing him to be struck by a certain hard surface; in violation of O.C.G.A. § 16-5-21.

Count IV accuses English of felony murder while in the commission of aggravated assault as alleged in Count VII.

Thus, Counts IV and VII of the indictment against English charge the offense of aggravated assault in the terms and language of OCGA § 16-5-21 and state the offense so plainly that a jury might easily understand the nature of the aggravated assault charged. OCGA § 17-7-54. English argues that he is accused of using his hands in a manner which is not, without additional qualification, unlawful, i.e., that a father shaking his infant son is not per se assaultive behavior or otherwise unlawful; he also urges that the language "by causing [Hunter Alexander English] to be struck by a cer-

---

[1] OCGA § 16-5-21 (a) provides:
    A person commits the offense of aggravated assault when he or she assaults:
    (1) With intent to murder, to rape, or to rob;
    (2) With a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury; or
    (3) A person or persons without legal justification by discharging a firearm from within a motor vehicle toward a person or persons.

tain hard surface" renders the charge of aggravated assault insufficient because it does not allege the use of any object at all for the assault, or what the "hard surface" was, or what part of the child's body was struck. But English's arguments overlook the fact that the counts allege that English used his hands as an offensive object, resulting in serious bodily injury to his son. See OCGA § 16-5-21 (a) (2). The counts then elaborate upon the manner in which English used his hands as an offensive object, that is, "by shaking [his infant son] with his hands and by causing [the baby] to be struck by a certain hard surface." Compare *D'Auria v. State*, 270 Ga. 499 (512 SE2d 266) (1999).

While the indictment against English does not state that his hands were used as deadly weapons, this omission does not render the charge flawed. In *Pye v. State*, 274 Ga. 839, 841 (4) (561 SE2d 109) (2002), this Court explained that "[t]he specific reference to 'deadly weapon' in *Smith v. Hardrick* must be seen as a general reference to the aggravating circumstance in OCGA § 16-5-21 (a) (2), which also includes 'any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury. . . .'" (Footnote omitted.) The indictment in this case sets forth both the unlawful assault and the aggravating circumstance. Moreover, it was unnecessary to allege apprehension by the victim as "apprehension is not an essential element of an assault in which it is alleged that the defendant attempted to commit a violent injury upon the victim." *Tucker v. State*, 245 Ga. App. 551, 553 (1) (538 SE2d 458) (2000).

Accordingly, Counts IV and VII in the indictment against English were not subject to the special demurrers, and it was error for the trial court to dismiss the charges.

### Case No. S02X1809

2. English's challenges to the denials of his special demurrers to the remaining counts in the indictment are without merit.

(a) English contends that Count I of the indictment (malice murder) was subject to a special demurrer. It charged English:

> with the offense of MALICE MURDER for that the said Adrian English on and between the 25th and 26th days of October, 2001, in the County aforesaid, did unlawfully and with malice aforethought, cause the death of Hunter Alexander English, a human being, by shaking him and by causing his head to be struck by a certain hard surface; in violation of O.C.G.A. § 16-5-1, Contrary to the laws of said State.

English complains that the phrases "by shaking him" and "by

causing his head to be struck by a certain hard surface" are not clear enough to inform him as to what conduct he must answer for. He argues that shaking a child is a fairly common occurrence among parents, and here, there is no allegation about the manner in which he shook his son; similarly, the count fails to allege in what manner the child's head was struck.

But such arguments overlook the fact that the count accuses English of the conduct of shaking his son and causing the child's head to be struck "unlawfully and with malice aforethought," resulting in the child's death and in violation of the statutory criminal offense of malice murder. It tracks the language of the statute, names the victim, gives the time and county in which the murder happened, and the methods by which the murder was committed. It is not required that the indictment give every detail of the crime.

> The true test of the sufficiency of an indictment to withstand a special demurrer "is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. It is useful to remember that the purpose of the indictment is to allow defendant to prepare his defense intelligently and to protect him from double jeopardy." (Citations, punctuation and emphasis omitted.)

*Coalson v. State*, 251 Ga. App. 761, 764 (2) (555 SE2d 128) (2001), quoting *Snider v. State*, 238 Ga. App. 55, 58 (2) (516 SE2d 569) (1999). Count I charging malice murder accomplishes such purpose; it is legally sufficient. See OCGA § 17-7-54; Division 1, supra.

(b) English contends that Counts V and II of the indictment (cruelty to children in the first degree and felony murder predicated on that offense as charged) were subject to special demurrers. Count V of the indictment charges English with:

> the offense of CRUELTY TO CHILDREN IN THE FIRST DEGREE for that the said Adrian English on and between the 25th and the 26th days of October, 2001, in the County aforesaid, did maliciously cause Hunter Alexander English, his son and a child under the age of eighteen years, cruel and excessive physical and mental pain by shaking him and by causing his head to be struck by a certain hard surface; in violation of O.C.G.A. § 16-5-70, Contrary to the laws of said State.

English contends that the mere allegation of "shaking" is insufficient to allege cruelty to children in the first degree, and that the language "by causing his head to be struck by a certain hard surface" merely states a conclusion. But here again English overlooks the additional language accusing him of shaking his minor child and causing the child's head to be struck by a certain hard surface so as to "maliciously cause" the child "cruel and excessive physical and mental pain" in violation of OCGA § 16-5-70. See *Smith v. State*, 249 Ga. App. 39, 41 (2) (547 SE2d 598) (2001). The trial court properly denied the special demurrers with regard to Counts V and II.

(c) Finally, English maintains that the trial court should have granted special demurrers with regard to Counts VI and III of the indictment (aggravated battery and felony murder predicated on the aggravated battery as charged). Count VI of the indict charges English with:

> the offense of AGGRAVATED BATTERY for that the said Adrian English on and between the 25th and 26th days of October, 2001, in the County aforesaid, did maliciously cause bodily harm to Hunter Alexander English, his son, by rendering his body and a member thereof useless and by seriously disfiguring his body; in that the said accused did shake Hunter Alexander English and cause his head to be struck by a certain hard surface; resulting in fractures to his skull and hemorrhaging involving his spinal cord and his eyes; in violation of O.C.G.A. § 16-5-2, Contrary to the laws of said State.

Once again, English urges that the language is merely conclusory and does not allege how he committed the crime, that aggravated battery can be committed in many ways and it is necessary that the indictment specifically allege the means and manner by which the aggravated battery was committed. Here, the indictment states that English "did maliciously cause" the bodily harm to his son and details how the aggravated battery was accomplished and the specific injuries that were sustained. It enables English to intelligently prepare a defense and safeguard against double jeopardy. See Division 2 (a), supra.

The trial court did not err by denying English's special demurrers to Counts III and VI of the indictment.

3. English was arrested on October 26, 2001, and first filed a motion for bond 94 days later, on January 28, 2002. Thereafter, he was indicted on February 6, 2002. Following a bond hearing, on March 4, 2002, the trial court rejected English's assertion that because he was not indicted within 90 days of his arrest, he was enti-

tled to bail as a matter of law under OCGA § 17-7-50,.which provides in pertinent part:

> Any person who is arrested for a crime and who is *refused bail* shall, within 90 days after the date of confinement, be entitled to have the charge against him or her heard by a grand jury having jurisdiction over the accused person. . . . *In the event no grand jury considers the charges against the accused person within the 90 day period of confinement . . . the accused shall have bail set upon application to the court.*

(Emphasis supplied.) The trial court found that OCGA § 17-7-50 did not apply to English because even though he was without bail, he had never asked for bail and therefore had not been "refused bail." The court then declined to grant bail to English at that time because it was "unable to find that [English] [posed] no significant threat or danger to any person, to the community or to any property in the community." However, the trial court erred in denying bail to English because of the mandate of OCGA § 17-7-50.

The trial court refused to apply OCGA § 17-7-50 to English's petition for bond because of the language "refused bail" in the first sentence of the statute. But the trial court's reading of OCGA § 17-7-50 is at odds with the rules of statutory construction, prior decisions of this Court interpreting the statute, and the realities of English's situation.

First, even though English did not petition for bond within 90 days of his arrest and incarceration, the fact that he remained in jail is tantamount to his being "refused bail."

More significantly, the rules of statutory construction prohibit the phrase "refused bail," from being considered in isolation, and consequently, to limit application of the mandate of OCGA § 17-7-50 to the circumstance in which a criminal defendant has made a request of the court for bond and bond has been refused. The language of the final sentence of the statute pertinent to this case, "[i]n the event no grand jury considers the charges against the accused person within the 90 day period of confinement . . . the accused shall have bail set upon application to the court," does not make a distinction between those detainees who are "refused bail" and those who are "without bail"; instead it states an entitlement to bail for the accused person who has not been indicted within 90 days of incarceration. This Court is to construe the statute to give sensible and intelligent effect to all of its provisions and to refrain from any interpretation which renders any part of the statute meaningless. *Sikes v. State*, 268 Ga. 19, 21 (2) (485 SE2d 206) (1997). The Court must also, if possible, reconcile any potential conflicts in the statute, so as to make them

consistent and harmonious. Id. Finally, "[c]riminal statutes must be construed strictly against the State and in favor of the accused. [Cit.]" *Palmer v. State*, 260 Ga. 330, 331 (393 SE2d 251) (1990).

This Court has confirmed that OCGA § 17-7-50 applies to unindicted pre-trial detainees being held without bail, regardless of whether bail was earlier requested and refused. In *Burke v. State*, 234 Ga. 512, 516-517 (5) (216 SE2d 812) (1975), this Court was asked to consider Code Ann. § 27-701.1 (Ga. L. 1973, pp. 291, 292), the predecessor of OCGA § 17-7-50, which contained the same language as the current statute with regard to non-death penalty cases.[2] Burke was confined "without bail" and without indictment for more than 90 days, and applied for bail which was then denied. *Burke v. State* at 516 (5). This Court held that the statutory command of Code Ann. § 27-701.1 was "applicable to all crimes after ninety days of confinement. After ninety days of confinement without bail and without indictment, the mandate of [the statute] is that bail must be set by the trial judge." *Burke v. State* at 517 (5). See also *Rawls v. Hunter*, 267 Ga. 109, 110 (475 SE2d 609) (1996) (disapproved dictum in *Burke v. State*, supra, not applicable in this case, but held that "[b]ecause [the defendant] spent 90 days incarcerated without having charges against him presented to the grand jury, he is entitled to have bond set").

Accordingly, we reverse the judgment of the trial court denying bail to English and remand for the setting of a reasonable bond. *Rawls v. Hunter* at 109.

*Judgment reversed in Case No. S02A1808. All the Justices concur. Judgment denying special demurrers affirmed in Case No. S02X1809. All the Justices concur. Judgment denying bail reversed and case remanded in Case No. S02X1809. All the Justices concur, except Fletcher, C. J., and Carley and Thompson, JJ., who dissent.*

CARLEY, Justice, concurring in part and dissenting in part.

As to the main appeal, I concur fully in the reversal of the order sustaining the special demurrers to the indictment. With regard to the cross appeal, however, I dissent to the reversal of the denial of English's application for mandatory bail.

OCGA § 17-7-50 provides, in relevant part, that

[a]ny person who is arrested for a crime *and who is refused bail* shall, within 90 days after the date of confinement, be entitled to have the charge against him or her heard by a grand jury having jurisdiction over the accused person. . . .

---

[2] OCGA § 17-7-50 now provides for the request of an extension of the 90-day period when a person is arrested for a crime for which the death penalty is being sought.

> In the event no grand jury considers the charges against the accused person within the 90 day period of confinement . . ., the accused shall have bail set upon application to the court. (Emphasis supplied.)

The majority holds that

> [t]he language of the final sentence of the statute . . . does not make a distinction between those detainees who are "refused bail" and those who are "without bail"; instead it states an entitlement to bail for the accused person who has not been indicted within 90 days of incarceration.

Majority opinion, p. 348. I disagree, because that interpretation mistakenly focuses on the last sentence in isolation, rather than in its proper context as an element of the statutory provision as a whole. When the code section is considered in its entirety, its primary purpose clearly is *not* to provide for mandatory bail for any defendant who was not indicted within 90 days of his arrest. Instead, it is intended to put the State on notice that, unless it indicts the arrestee by a date certain, it cannot thereafter contest his right to bail. The language of the statute "is unambiguous. *If* the [S]tate refuses bail to an incarcerated person, *then* the [S]tate must present its case to a grand jury for indictment within 90 days. *If* the [S]tate fails to do this, *then* bail is mandatory. [Cit.]" (Emphasis supplied.) *Rawls v. Hunter*, 267 Ga. 109 (1) (475 SE2d 609) (1996) (defendant twice sought bail, and it was refused both times). Thus, only an accused who actively sought and was "refused bail" within 90 days of his arrest is entitled to mandatory bail pursuant to the last sentence of OCGA § 17-7-50.

According to the majority, "the fact [that English] remained in jail is tantamount to his being 'refused bail.'" Majority opinion, p. 348. However, an arrestee obviously cannot be "refused bail" unless and until he requests it. The burden is on the accused to seek bail and, if he remains mute and fails to do so, the State is not put on notice that it must indict him within 90 days of his arrest or concede his right to bail. Where, as here, the defendant is charged with an offense bailable only before a superior court, he "may petition the superior court requesting that [he] be released on bail. The court shall notify the district attorney and set a date for a hearing within ten days after receipt of such petition." OCGA § 17-6-1 (d). However, the record reveals that English "neither formally requested nor made application for bail and there is nothing to show he was prevented from doing so if he desired." *Beavers v. State*, 132 Ga. App. 94, 95 (3) (207 SE2d 550) (1974). Because he did not seek and was not "refused

bail" in the 90 days following his arrest, he did not put the prosecution on notice of his insistence upon being indicted within that period. Consequently, he would not be entitled to mandatory bail under OCGA § 17-7-50 when the 90 days passed and no indictment was returned. Compare *Rawls v. Hunter*, supra at 109 (2).

The majority mistakenly relies on *Burke v. State*, 234 Ga. 512, 516 (5) (216 SE2d 812) (1975) for a contrary construction of the statute. All *Burke* holds is that, "[a]fter ninety days of confinement *without bail* and without indictment, the mandate of [OCGA § 17-7-50] is that bail must be set by the trial judge." (Emphasis supplied.) *Burke v. State*, supra at 517 (5). The majority construes "without bail" as meaning "regardless of whether bail was earlier requested and refused." Majority opinion, p. 349. However, nothing compels the conclusion that *Burke* employed the phrase in that sense. "Without bail" does not imply that a request for same either was or was not made.

In addition, *Burke* cannot be controlling authority for the proposition that mandatory bail is available to all unindicted pre-trial detainees after 90 days regardless of whether bail was previously sought and refused, because that issue was simply not raised and decided in that case. Instead, the State "argue[d] that the ninety day provision . . . is not applicable to the crimes enumerated in [OCGA § 17-6-1], and that as to those enumerated crimes, the matter of granting bail is still in the discretion of the trial judge." *Burke v. State*, supra at 517 (5). This Court rejected that contention, holding that OCGA § 17-7-50 "*is applicable to all crimes* after ninety days of confinement. After ninety days of confinement without bail and without indictment, the mandate of [OCGA § 17-7-50] is that bail must be set by the trial judge." (Emphasis supplied.) *Burke v. State*, supra at 517 (5). Thus, *Burke* stands only for the proposition that, regardless of the nature of the alleged crime, bail is not discretionary after 90 days of detention without indictment. It does *not* hold that bail is mandatory after the 90-day period passes in cases where the accused did not seek and was not "refused bail" during that time. " ' "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." ' [Cits.]" *Gordy Tire Co. v. Dayton Rubber Co.*, 216 Ga. 83, 89 (1) (114 SE2d 529) (1960).

Moreover, *Rawls v. Hunter*, supra at 109 (1), holds:

> The record in this case is clear that [the defendant] was incarcerated for more than 90 days without having a grand jury hear the charges against him *and that he twice sought and was refused bail*. When [he] made his application for bail on the 91st day of his incarceration, the trial court had no choice but to set a reasonable bond. (Emphasis supplied.)

*Rawls* certainly constitutes implicit authority for the proposition that a prior refused request for bail *is* required. While it could be argued that *Burke* represents implicit authority for the contrary proposition, *Rawls*, as the more recent decision, would necessarily control this case. *Hall v. Hopper*, 234 Ga. 625, 629 (3) (216 SE2d 839) (1975).

Under the majority's expansive construction of OCGA § 17-7-50, a defendant could be arrested for the most heinous crimes and, by simply remaining silent and allowing 90 days to pass without the State seeking an indictment, insist on his right to mandatory bail. According to the express terms of OCGA § 17-7-50, however, mandatory bail should be limited to those defendants who, having sought and been "refused bail," put the State on notice that it must obtain an indictment within 90 days of the arrest. Because English is not eligible for mandatory bail under OCGA § 17-7-50, the trial court correctly refused to grant his application seeking it.

I am authorized to state that Justice Thompson joins in this opinion.

DECIDED MARCH 24, 2003.

*Kenneth W. Mauldin, District Attorney, Edward H. Brumby, Jr., Assistant District Attorney*, for appellant.
*Russell C. Gabriel*, for appellee.