**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 19, 2015**

# In the Court of Appeals of Georgia

A15A1534. COLE v. THE STATE.                    JE-056C

ELLINGTON, Presiding Judge.

Following our grant of her application for interlocutory appeal, Tushanna Cole appeals from the trial court's order overruling her special demurrer to an indictment charging her with Medicaid fraud and theft by taking. Cole contends that the indictment's identification of 44 individuals identified therein by their initials was improper, and that the range of dates the crimes were committed, as set forth in the indictment, is unreasonably broad. For the reasons set forth below, we conclude that, as the State could have more narrowly stated the dates on which the crimes were committed, the range of dates set forth in the indictment was overly broad, and reverse.

Cole was indicted in the Superior Court of Clayton County for the offenses of

Medicaid fraud, OCGA § 49-4-146.1 (b) (1), and theft by taking, OCGA § 16-8-2. In Count 1, the indictment charged that Cole committed medicaid fraud in that,

> beginning on or about November 1, 2010[,] and continuing through on or about December 27, 2013, [she] did unlawfully and intentionally obtain and keep for herself medical assistance payments in an amount greater than that to which she was entitled from the Georgia Medicaid Program by means of a fraudulent scheme[.]

Paragraphs numbered 1 through 7 of Count 1 described the fraudulent scheme. According to the indictment, Cole, who was enrolled as a provider in the Georgia Medicaid program, "submitted numerous false claims to Georgia Medicaid for reimbursement."

> In particular, paragraph 5 provided:

> It was part of the fraudulent scheme for the accused to unlawfully obtain and retain medical assistance payments for services not rendered to the patients listed in Exhibit A, incorporated herein by reference, with each line of Exhibit A constituting a separate act. These patients did not receive the extent of services billed.

Paragraph 6 states that "[i]t was also a part of the fraudulent scheme for the accused to obtain reimbursement for services for which there was no documentation to substantiate billing. These services were billed for the recipients identified in Exhibit

2

B with each line of Exhibit B constituting a separate act." According to the indictment, Georgia Medicaid made payments to Cole in the total amount of $297,831.39 as a result of the fraudulent scheme.

Count 2 charged that Cole committed theft by taking in that, "between on or about November 1, 2010, and continuing through on or about December 27, 2013," she unlawfully took more than $1,500 from the State of Georgia. According to the indictment, Cole took the money "with the intention of depriving the State of Georgia of said money by and through the acts" described in Count 1.

On the day of her arraignment, Cole filed a "preliminary special demurrer," which she then amended. Following a hearing, the trial court overruled the special demurrer. The trial court granted a certificate of immediate review of its order, and this Court granted Cole's application for an interlocutory appeal. On appeal, consistent with her arguments below, Cole contends that the trial court erred in overruling her special demurrer because (1) it was not sufficient for the indictment to identify by their initials the individuals listed in Exhibits "A" and "B" thereto, and (2) the range of dates set forth in the indictment was unreasonably broad.

> The true test of the sufficiency of an indictment to withstand a special demurrer is not whether it could have been made more definite and

certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what [she] must be prepared to meet, and, in case any other proceedings are taken against [her] for a similar offense, whether the record shows with accuracy to what extent [she] may plead a former acquittal or conviction. It is useful to remember that the purpose of the indictment is to allow defendant to prepare [her] defense intelligently and to protect [her] from double jeopardy.

Citations and punctuation omitted.) *State v. English*, 276 Ga. 343, 346 (2) (a) (578 SE2d 413) (2003). See *Palatini v. State*, 333 Ga. App. 523, 524 (774 SE2d 818) (2015) ("By special demurrer, an accused claims, not that the charge in an indictment is fatally defective and incapable of supporting a conviction . . . , but rather that the charge is imperfect as to form or that the accused is entitled to more information.") (citations and punctuation omitted).

"We conduct a de novo review of a trial court's ruling on a special demurrer in order to determine whether the allegations in the indictment are legally sufficient." (Citation and punctuation omitted.) *State v. Godfrey*, 309 Ga. App. 234, 239 (3) (709 SE2d 572) (2011). When, as here, we review an indictment before a trial, "we must apply the rule that a defendant who has timely filed a special demurrer is entitled to

4

an indictment perfect in form and substance." *State v. Gamblin*, 251 Ga. App. 283, 284 (1) (553 SE2d 866) (2001).

1. Cole contends that the trial court erred in finding that it was sufficient for the indictment to identify the individuals named therein merely by their initials. Exhibit "A" and Exhibit "B" to the indictment, incorporated therein by reference, each contains a list of patients identified by their initials, dates of birth, the last four digits of their Medicaid identification numbers, the first and last dates of service for the patients, and the amount of the alleged overpayment with respect to each patient. According to the indictment, the patients listed in Exhibit "A" are the patients who did not receive the extent of services billed, and the persons listed in Exhibit 'B" are the patients for which Cole billed for services for which there was no substantiating documentation. The 44 patients thereby identified are all minors, and the State omitted their full names from the indictment out of a concern that the exhibits referenced "sensitive health information."

Generally, "if [a charging instrument] charges the defendant with committing a crime against a person, the injured person should be identified in the [charging instrument]." *State v. Kenney*, 233 Ga. App. 298, 299 (1) (a) (503 SE2d 585) (1998).

5

In this case, however, the indictment does not charge Cole with committing a crime against *a person* but against the State of Georgia. Indeed, Cole concedes that the patients listed in the exhibits are not the victims of the alleged crimes of Medicaid fraud and theft by taking.[1] Thus, *Sellers v. State*, 263 Ga. App. 144, 145-146 (587 SE2d 276) (2003), and *Driggers v. State*, 295 Ga. App. 711, 717 (4) (a) (673 SE2d 95) (2009), which found that an indictment's identification of a victim by initials was not sufficient to withstand a special demurrer, are distinguishable. The omission of individuals' names from an indictment is not a ground for sustaining a special demurrer where, as in the case of these patients, the individuals "are only collaterally involved in the alleged offense." *State v. Kenney*, 233 Ga. App. at 299 (1) (a).

Further, contrary to Cole's contention, the indictment did not identify the patients solely by their initials; rather, the inclusion of additional information, that is, each patient's date of birth and the last four digits the patients' unique Medicaid

---

[1] The victim of both crimes was the State of Georgia. The property taken in charge of theft by taking is identified as belonging to the State. As to the crime of Medicaid fraud, OCGA § 49-4-146.1 (b) (1) provides that it is unlawful "[f]or any person or provider to obtain . . . any medical assistance or other benefits or payments under this article . . . to which the person or provider is not entitled . . . ." "Payment" is defined in applicable part, as "a payment or approval for payment, any portion of which is paid by the Georgia Medicaid program." OCGA § 49-4-146.1 (a) (5).

6

identification number, ensured that each patient was specifically identified.[2] In contrast to *Sellers*, the record does not show that "the initials . . . could apply to any [person] having [the same] initials." *Sellers v. State*, 263 Ga. App. at 146. Notwithstanding its identification of the patients, in part, by their initials, the indictment was sufficient to allow Cole "to prepare [her] defense intelligently and to protect [her] from double jeopardy." (Citation and punctuation omitted.) *State v. English*, 276 Ga. at 346 (2) (a). Accordingly, the trial court did not err in finding that the indictment was sufficiently detailed as to the patients' identities.

2. Cole also contends that the trial court erred in overruling her special demurrer with regard to portions of the indictment that contended that the crimes were committed over a range of 38 months because the specific dates were known to the State. We agree.

Under OCGA § 17-7-54, the form of the indictment shall "state with sufficient certainty the offense and the time and place of committing the same[.]" And as a general rule, "an indictment which fails to allege a specific date on which the crime was committed is not perfect in form and is subject to a timely special demurrer."

---

[2] Two of the patients have the same date of birth and initials, and are apparently twins, but their Medicaid identification numbers are not the same.

(Punctuation and footnote omitted.) *State v. Layman*, 279 Ga. 340, 340-341 (613 SE2d 639) (2005). This Court recognizes an "exception to this rule where the evidence does not permit the State to identify a single date on which the offense occurred[.]" (Citation and punctuation omitted.) *State v. Meeks*, 309 Ga. App. 855, 857 (1) (711 SE2d 403) (2011). But "the exception does not apply unless the State first presents evidence to the trial court showing that it cannot more specifically identify the dates of the offenses." (Citation and punctuation omitted.) Id.

Here, the State presented the testimony of its investigator, Kevin White, in support of its contention that it could not allege a specific date for the commission of the alleged Medicaid fraud and theft by taking. White testified that he reviewed claims constituting "what Ms. Cole would have submitted to Medicaid and what she was paid by Medicaid," and he compared patient files and patient records with the claims data. As part of the investigation, he reviewed approximately 3,000 claims. According to White, the range of dates covered by the claims was from November 2010 through the end of December 2013. Claims were submitted by Cole "continuously throughout . . . that time frame."

On cross-examination, White testified that Cole submitted the claims electronically, with each claim submitted for a specific date and a billing amount for

8

that specific date. White agreed that he determined that "some dates were evidence of thefts and some dates [were] not." White also agreed that he "used those specific dates to come up with a number, $297,831.39."

White's testimony suggests that the State could have identified, by date, each of the electronically filed claims that White had found to be acts of Medicaid fraud and theft by taking. The State did not present evidence showing that it could not more specifically identify the date of each criminal act. See *State v. Meeks*, 309 Ga. App. at 857 (1) (finding that the State failed to demonstrate an inability to narrow the range of dates on which the charged crimes of electronically furnishing obscene material to a minor and contributing to a delinquency of a minor were committed, noting that "[o]rdinarily, the date on which a document is created or saved on a computer can be established, as well as the date on which an e-mail was sent or received.") (citation omitted). Where a defendant is charged with committing a crime over a range of dates, and the State does not present evidence that it cannot identify the specific dates on which the crime was committed, we have generally found the indictment to be subject to a special demurrer. For example, in *State v. Thomas*, 331 Ga. App. 220 (770 SE2d 301) (2015), we rejected an argument by the State that, where the alleged theft was made by the use of a credit card, it was sufficient for the indictment to

allege the range of dates in which the financial card transactions occurred. See id. at 222 ("[T]he State could easily ascertain the dates the alleged crimes occurred and could have stated the manner in which the theft occurred, and it was, therefore, appropriate for the trial court to grant the motion to quash.") (footnote omitted). In *South v. State*, 268 Ga. App. 110 (601 SE2d 378) (2004), the appellant, South, was charged with committing the offense of aggravated stalking "from the 12th day of October, 2002 through the 29th day of October, 2002." Id. at 111. We concluded that the trial court erred in failing to grant South's special demurrer to the indictment, finding that

> a review of the record indicates that the State could have had access to the actual dates on which the acts of alleged stalking occurred. The State simply chose not to list these dates due to the number of alleged acts. This is not a valid excuse for failing to provide South with the dates of the alleged offenses.

Id. at 112 (1). See also *State v. Meeks*, 309 Ga. App. at 858 (1). Compare *Blanton v. State*, 324 Ga. App. 610, 615-617 (2) (a) (751 SE2d 431) (2013) (finding that the trial court did not err in denying appellant's special demurrer where the evidence showed that the defendant had engaged in acts of incest with the victim over 50 times during

the two-year period alleged in the indictment, and the victim was unable to specifically identify the date of any specific incident).

Here, the evidence showed that the State had access to the dates of the "numerous false claims" that Cole allegedly submitted, but chose not to identify any of them. The State argues that the range of dates set forth in the indictment was nevertheless sufficient because the indictment alleged, as to both counts, a single scheme which was conducted over the time period identified in the indictment.[3] To support its argument, the State relies on *Johnson v. State*, 233 Ga. App. 450 (504 SE2d 290) (1998) as "the case most similar to the present one."[4] There, the indictment alleged, in substance, that the defendants fraudulently obtained money from a laboratory "over a specific time period within a single calendar year, between the 1st day of March, 1996, and the 30th day of June, 1996, by the artifice of submitting four

---

[3] The State also argues that Cole should not be allowed to "hide behind the magnitude and scope of her conduct," but does not show that the extent of the alleged offenses, for which Cole has not been convicted, deprives her of her right to insist on an indictment perfect in form and substance.

[4] The State also cites to *Simmons v. State*, 79 Ga. App. 390 (53 SE2d 772) (1949), as "instructive" to show that a series of conversions constitutes a single scheme that may charged in a single count of an indictment. Cole did not, however, contest the inclusion of multiple acts within each of the counts of Medicaid fraud and theft by taking.

11

specified billings which intentionally overstated work performed." Id. at 451-452 (2).

We concluded that the indictment stated the offense and the time with sufficient

certainty, noting that the alleged theft by deception would have required two steps in

both submitting the fraudulent bills and then accepting any tendered payments

therefore. Id. at 452 (2). Our analysis suggests that it is significant that the alleged

crime was necessarily committed in multiple steps over a range of time. Similarly, in

this case the indictment alleges a fraudulent scheme over a period of time, and that

Cole did both "obtain and keep" the funds to which she was not entitled.

We conclude that *Johnson* is nevertheless distinguishable. The indictment at

issue in *Johnson* specifically identified the four billings in which the appellants had

allegedly overcharged the laboratory during the designated four month time period.

Id. at 450 (The indictment alleged that appellants had overstated the number of

certain procedures and audits on "Phlebotomy, Inc. Invoice numbers 1001, 1002,

1003, and 1004[.]"). Thus, the defendants were aware of how the crime was alleged

to have been committed and could prepare their defenses accordingly. In contrast to

the appellants in *Johnson*, Cole is not apprised by the indictment of the claims that

the State contends are fraudulent,[5] leaving Cole uncertain of which of the thousands of claims she submitted to Medicaid over a more than three year period are pertinent to her defense. And as White was aware of the dates of the alleged false claims, and the State was able to use the electronic information available to White to calculate the amount of the alleged overcharges down to the penny, the State did not show that it was unable to more narrowly state the dates of the crimes. Thus, we conclude, because the indictment alleges that the crimes of Medicaid fraud and theft by taking were committed over a range of dates and the State did not establish that it was unable to more narrowly identify those dates, the trial court erred in denying Cole's special demurrer to the indictment.[6]

*Judgment reversed. Dillard and McFadden, JJ., concur.*

---

[5] The exhibits to the indictment may narrow the claims at issue to some extent, but they do not identify the claims that the State identified as fraudulent by their date, or otherwise.

[6] "[W]e note that, on special demurrer, the quashing of an indictment merely bars trial on the flawed instrument; it does not bar the State from reindicting and trying the defendant." (Footnote omitted.) *Sellers v. State*, 263 Ga. App. at 146.