**THIRD DIVISION**
**DILLARD,**
**MCFADDEN and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 24, 2016**

# In the Court of Appeals of Georgia

A15A1738. KIMBROUGH et al. v. THE STATE.

McFADDEN, Judge.

The state charged appellants Heather Kimbrough and Melissa Ann Mayfield ("the defendants"), along with two other people, with violation of the Georgia Racketeer Influenced Corrupt Organizations (RICO) Act, OCGA §§ 16-14-1 et seq. and certain drug offenses. The defendants filed general and special demurrers to the Georgia RICO Act count of the indictment. The trial court denied the demurrers, and we granted the defendants' application for interlocutory review. On appeal, the defendants argue that the indictment fails to specify how they violated the Georgia RICO Act. We hold that the Georgia RICO Act count, which largely tracks the language of the statute, is sufficient to withstand the demurrers and thus affirm the trial court.

1. *State's request to dismiss the appeal*.

Initially, we reject the state's argument that we should dismiss the appeal because Kimbrough did not timely file her demurrers. A defendant may file a general demurrer at any time before the trial court. *Jackson v. State*, 316 Ga. App. 588, 592 (2) (730 SE2d 69) (2012). It is true that a defendant must file a special demurrer "within ten days after the date of arraignment, unless the time for filing is extended by the court." OCGA § 17-7-110. See *Palmer v. State*, 282 Ga. 466, 468 (651 SE2d 86) (2007). But the state points to nothing in the appellate record showing the date of arraignment so as to support its argument that Kimbrough's special demurrer was untimely. See *McHugh Fuller Law Group v. PruittHealth-Toccoa*, 297 Ga. 94, 98 (2) (772 SE2d 660) (2015) (appellee may designate for inclusion in the appellate record any materials that the appellant has omitted). In any event, it is not a ground for dismissing an appeal that a special demurrer, or for that matter any motion, was not timely filed in the trial court. See OCGA § 5-6-48 (b).

2. *Demurrers*.

"A demurrer to an indictment may be general or special. A general demurrer challenges the very validity of the indictment [while] the special objects merely to its form or seeks more information. . . ." *Stinson v. State*, 279 Ga. 177, 180 n. 3 (2) (611

SE2d 52) (2005) (citation omitted). "We review a trial court's ruling on a general or special demurrer de novo in order to determine whether the allegations in the indictment are legally sufficient." *Sallee v. State*, 329 Ga. App. 612, 616 (2) (765 SE2d 758) (2014) (citations omitted).

The defendants challenge count one of the indictment which charged them and two other people with:

> the offense of RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS – CONDUCTING OR PARTICIPATING IN AN ENTERPRISE THROUGH PATTERN OF RACKETEERING ACTIVITY (OCGA § 16-14-4 [b]) in that the said accused, in the State of Georgia and County of Gwinnett, between the 20th day of January, 2012 and the 12th day of July, 2012, being associated with an enterprise to wit: Executive Wellness and Rehabilitation, did participate in, directly and indirectly, such enterprise through a pattern of racketeering activity, as more particularly described in this count and this indictment, which counts are incorporated herein by reference as if fully set forth. At all times material to this Count of this indictment, the enterprise was a corporation or a group of people associated in fact although not a legal entity. The pattern of racketeering activity consisted of the following: between the 20th day of January, 2012 and the 12th day of July, 2012, in Gwinnett County, Georgia, the accused did commit the offense of Violation of the Georgia Controlled Substances Act: Unauthorized Distribution (OCGA § 16-13-43), in that said accused unlawfully obtained possession of Oxycodone, a Schedule II Controlled Substance,

by withholding information from various practitioners, to wit: [five named individuals], that the accused had obtained a controlled substance of a similar therapeutic use in a concurrent time period from another practitioner, contrary to the laws of said State, the peace, good order and dignity thereof.

The next 21 counts of the indictment charged Kimbrough and Mayfield with specific acts in violation of OCGA § 16-13-43, which prohibits the unauthorized distribution of controlled substances. Under former OCGA § 16-14-3 (9) (A) (i),[1] violations of OCGA § 16-13-43 could be racketeering activity.

(a) *General demurrer*.

In a general demurrer, a defendant

challenges the validity of an indictment by asserting that the substance of the indictment is legally insufficient to charge any crime, and it should be granted only when an indictment is absolutely void in that it fails to charge the accused with any act made a crime by the law. Put another way, the true test of the sufficiency of an indictment to withstand a general demurrer is found in the answer to the question: Can the defendant admit the charge as made and still be innocent? If he can, the indictment is fatally defective.

---

[1] In 2015, the General Assembly revised OCGA § 16-14-3, and a substantially similar provision is now found at OCGA § 16-14-3 (5) (A) (xxxiv).

*Poole v. State*, 326 Ga. App. 243, 247-248 (2) (a) (756 SE2d 322) (2014) (citation and punctuation omitted). And "[e]very indictment of the grand jury which states the offense in the terms and language of [our] Code or so plainly that the nature of the offense charged may easily be understood by the jury shall be deemed sufficiently technical and correct." OCGA § 17-7-54 (a). "Thus, an indictment couched in the language of the statute alleged to have been violated is not subject to a general demurrer." *State v. Wyatt*, 295 Ga. 257, 260 (2) (759 SE2d 500) (2014) (citation and punctuation omitted). Here, count one of the indictment substantially tracks the language of OCGA § 16-14-4 (b), which provides that, "It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity." Count one was thus sufficient to withstand the defendants' general demurrers. *Wyatt*, 295 Ga. at 260 (2).

(b) *Special demurrer*.

The defendants argue that the trial court erred by denying their special demurrers because count one fails to inform them of: the manner in which they allegedly participated in the enterprise; the enterprise's relationship to the alleged

5

racketeering activity; and which substantive counts in the indictment constitute the predicate acts. We disagree.

"By filing a special demurrer, an accused claims, not that the charge in an indictment is fatally defective and incapable of supporting a conviction (as would be asserted by general demurrer), but rather that the charge is imperfect as to form or that the accused is entitled to more information." *State v. Delaby*, 298 Ga. App. 723, 724 (681 SE2d 645) (2009) (citations and punctuation omitted). See also *Christian v. State*, 288 Ga. App. 546, 548 (2) (654 SE2d 452) (2007) (defendant seeking "greater specificity with regard to the . . . circumstances of the alleged crime" must file special demurrer). We must determine

> not whether the indictment could have been clearer, but whether it states the elements of the offense and sufficiently apprises the defendant of what [s]he must be prepared to meet, and, in case any other proceedings are taken against [her] for a similar offense, whether the record shows with accuracy to what extent [s]he may plead a former acquittal or conviction.

*Delaby*, 298 Ga. App. at 724-725 (citation and punctuation omitted).

(i) *Participation in the enterprise and the enterprise's relationship to the alleged racketeering activity.*

6

We reject the defendants' arguments that the indictment does not sufficiently allege the manner in which they participated in the enterprise and the enterprise's relationship to the alleged racketeering activity. We note at the outset that our Supreme Court has rejected a vagueness and overbreadth challenge to OCGA § 16-14-4 (b)'s "participate in [an] enterprise" language. (As detailed in Division 2 (a), OCGA § 16-14-4 (b) provides that, "It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity."). In *Chancey v. State*, 256 Ga. 415 (349 SE2d 717) (1986), the court rejected the contention that OCGA § 16-14-4 (b) "is vague and overbroad in that it makes it unlawful to 'associate' or 'participate' even 'indirectly' in an enterprise." Id. at 427-428 (III) (4) (D). The court ruled that the challenge lacked merit because the statute requires "such participation in the enterprise [to] be 'through a pattern of racketeering activity.'" Id. at 428 (III) (4) (D). Further, the court held "that 'any person' of average intelligence, on a clear reading of that statute, together with relevant definitional provisions, could not help but realize that they would be criminally liable for participating in 'any enterprise,' including their own, 'through a pattern of racketeering activity.'" Id. (citations and punctuation omitted).

7

Largely tracking the statutory language, and in accordance with the principles of *Chancey*, count one of the indictment alleges that the defendants participated in Executive Wellness through a pattern of racketeering activity. It generally describes the racketeering activity as unlawfully obtaining possession of oxycodone by withholding information from the practitioners who prescribed the drug and then describes that activity more specifically by incorporating the remaining counts of the indictment, which set out the predicate acts with more specificity.

This is sufficient to allege the manner in which the defendants participated in the enterprise: they participated by allegedly committing the predicate acts. Moreover, count one provides a nexus between the predicate acts and the enterprise by use of the preposition "through." See *Rodriguez v. State*, 284 Ga. 803, 807 (1) (671 SE2d 497) (2009) (addressing similar Georgia Street Gang Terrorism and Prevention Act).

"Because the Georgia RICO Act was modeled after the federal statute, [our supreme c]ourt has found federal authority persuasive in interpreting the Georgia RICO statute. . . ." *Williams Gen. Corp. v. Stone*, 279 Ga. 428, 430 (614 SE2d 758) (2005). Federal courts have rejected similar challenges to RICO indictments. See *United States v. McDonough*, 959 F2d 1137, 1140-1141 (1st Cir. 1992); *United States v. Cauble*, 706 F2d 1322, 1334 (B) (5th Cir. 1983).

8

It is true, as the defendants argue, that where the statutory definition of an offense includes generic terms, the state may be required to state the "species of acts charged [and] descend to particulars." *Delaby*, 298 Ga. App. at 725 (citation and punctuation omitted). But here, the state did just that, specifying in the counts alleging predicate acts the acts that amounted to the defendants' participation in the enterprise. We conclude that the indictment, when read as a whole, was sufficient to withstand the special demurrer on the these grounds. See *State v. Pittman*, 302 Ga. App. 531, 534-535 (690 SE2d 661) (2010) (finding indictment that in one count tracked the generic language of OCGA § 16-14-4 (a) and then in other counts included detailed predicate acts was sufficient to withstand special demurrer).

(ii) *Predicate acts*.

We reject the defendants' argument that the indictment does not clearly specify the predicate acts alleged against them. As noted above, count one provides that the defendants engaged in

> a pattern of racketeering activity, as more particularly described in this count and this indictment, which counts are incorporated herein by reference as if fully set forth. . . . The pattern of racketeering activity consisted of the following: . . . the accused did commit the offense of Violation of the Georgia Controlled Substances Act: Unauthorized Distribution (OCGA § 16-13-43), in that said accused unlawfully

9

obtained possession of Oxycodone, a Schedule II Controlled Substance, by withholding information from various practitioners. . . .

More succinctly, count one specifies that the pattern of racketeering activity was unlawfully obtaining oxycodone, and it incorporates as predicate acts the remaining counts of the indictment charging the defendants with unlawfully obtaining oxycodone.

Two of the counts against only Mayfield, counts 12 and 13, allege that she unlawfully obtained hydrocodone, not oxycodone. Hydrocodone and oxycodone, although both opioids, are depicted as two different controlled substances in our Code. See OCGA § 16-13-26 (1) (A) (ix) & (xiv). To the extent that Mayfield argues that the word "counts" means that the hydrocodone counts against her are also charged as predicate acts, we disagree. The indictment is specific: it alleges that the defendants' unlawfully obtaining possession of oxycodone amounted to a pattern of racketeering activity. And to the extent the word "counts" can be read to include counts 12 and 13 – in spite of the sentence specifying that it is oxycodone at issue in the RICO count – this is mere surplusage. "An allegation in an indictment that is wholly unnecessary to constitute the offenses charged is mere surplusage." *Fair v. State*, 284 Ga. 165, 167 (2) (a) (664 SE2d 227) (2008) (citation and punctuation

10

omitted). "Mere surplusage will not vitiate an indictment. . . . " *State v. Corhen*, 306

Ga. App. 495, 499 (2) (700 SE2d 912) (2010) (citation omitted). Reading the word

"counts" to include counts 12 and 13

> is not essential to charge an offense under Count 1 . . . so [such a reading] may be omitted without affecting the validity of the individual charges. . . . [T]o the extent that the language is confusing to [Mayfield] because it fails to notify [her] as to what [predicate acts she] must defend against, disregarding or omitting [such a reading of] the language as surplusage resolves that confusion.

Id. at 499 (2).

*Judgment affirmed. Dillard and Rickman, J.J., concur*.