300 Ga. 878
FINAL COPY

S16G1313. KIMBROUGH et al. v. THE STATE.

BLACKWELL, Justice.

Heather Leigh Kimbrough and Melissa Ann Mayfield were charged by indictment with a violation of the Georgia Racketeer Influenced and Corrupt Organizations (RICO) Act.[1] The indictment alleges that Kimbrough and Mayfield, being associated with an enterprise, violated the Act by participating in the affairs of the enterprise through a pattern of racketeering activity, see OCGA § 16-14-4 (b),[2] and it identifies the alleged enterprise[3] and pattern of

---

[1] See OCGA § 16-14-1 et seq.

[2] Subsection 16-14-4 (b) provides that it is unlawful "for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity."

[3] As the term is used in the RICO Act, an "enterprise"
means any person, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity; or any unchartered union, association, or group of individuals associated in fact although not a legal entity; and it includes illicit as well as licit enterprises and governmental as well as other entities.
OCGA § 16-14-3 (3).

racketeering activity.[4] But other than the allegation that Kimbrough and Mayfield participated in the enterprise "through" a pattern of racketeering activity, the indictment says nothing at all about the alleged connection between the enterprise and the racketeering. Seeking more detail about that alleged connection, Kimbrough and Mayfield filed special demurrers. The trial court, however, denied the special demurrers, and Kimbrough and Mayfield appealed.[5] In Kimbrough v. State, 336 Ga. App. 381, 384-386 (2) (b) (i) (785 SE2d 54) (2016), the Court of Appeals held that the indictment contains enough detail about the connection between the enterprise and the racketeering activity to survive a special demurrer, and it affirmed the denial of Kimbrough and

---

[4] In pertinent part, the RICO Act defines a "pattern of racketeering activity" as [e]ngaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one of such acts occurred after July 1, 1980, and that the last of such acts occurred within four years, excluding any periods of imprisonment, after the commission of a prior act of racketeering activity[.] OCGA § 16-14-3 (4) (A). As the term is used in the Act, "racketeering activity" includes the commission of any one of several crimes enumerated in OCGA § 16-4-3 (5).

[5] The trial court certified its denial of the special demurrers for immediate review, and Kimbrough and Mayfield filed applications for leave to take an interlocutory appeal. See OCGA § 5-6-34 (b). The Court of Appeals granted their applications.

2

Mayfield's special demurrers. We issued a writ of certiorari to review that decision, and for the reasons that follow, we reverse.[6]

1. In July 2013, a Gwinnett County grand jury returned a 50-count indictment against Kimbrough, Mayfield, Jason Dennis Doerr, and Samantha Shay Downard.[7] Count 1 charges all of the defendants with a violation of the RICO Act, alleging that they, "being associated with an enterprise[,] to wit: Executive Wellness and Rehabilitation, did participate in, directly and indirectly, such enterprise through a pattern of racketeering activity." Count 1 further alleges that the pattern of racketeering activity consists of multiple violations of the Georgia Controlled Substances Act.[8] More specifically, Count 1 alleges that the racketeering activity involved the defendants unlawfully obtaining Oxycodone (a Schedule II controlled substance) by "withholding information from various [medical] practitioners . . . that [the defendants] had obtained a controlled substance of a similar therapeutic use in a concurrent time period

---

[6] The Court of Appeals also affirmed the denial of Kimbrough and Mayfield's general demurrers, see 336 Ga. App. at 383-384 (2) (a), as well as the denial of their special demurrers seeking more detail about the alleged acts of racketeering. See id. at 386-387 (2) (b) (ii). We do not address those aspects of the decision below.

[7] Doerr and Downard are not parties to this appeal.

[8] See OCGA § 16-13-20 et seq.

3

from another practitioner." See OCGA § 16-13-43 (a) (6).[9] Count 1 says that the pattern of racketeering activity is "more particularly described" in subsequent counts of the indictment, and indeed, 19 other counts charge various defendants with unlawfully obtaining Oxycodone by withholding information from a medical practitioner.[10] The remaining 30 counts charge various other violations of the Controlled Substances Act.[11] Altogether, the indictment identifies

[9] Paragraph 16-13-43 (a) (6) makes it unlawful for any person "[t]o withhold information from a practitioner that such person has obtained a controlled substance of a similar therapeutic use in a concurrent time period from another practitioner."

[10] The pattern of racketeering activity is "more particularly described" in: Counts 3, 5, 7, 9, 11, and 15 (charging Mayfield with obtaining Oxycodone by withholding information from a practitioner); Counts 17 through 22 (charging Kimbrough with obtaining Oxycodone by withholding information from a practitioner); Counts 26, 29, 32, and 35 (charging Doerr with obtaining Oxycodone by withholding information from a practitioner); and Counts 47, 49, and 50 (charging Downard with obtaining Oxycodone by withholding information from a practitioner).

[11] Counts 2, 4, 6, 8, 10, and 14 charge Mayfield with unlawfully obtaining Oxycodone by subterfuge in violation of OCGA § 16-13-43 (a) (3). Counts 12 and 13 charge Mayfield with unlawfully obtaining Hydrocodone (a Schedule III controlled substance) by subterfuge and withholding information from a practitioner in violation of OCGA § 16-13-43 (a) (3) and (6). Count 16 charges Kimbrough with unlawfully obtaining Oxycodone by subterfuge in violation of OCGA § 16-13-43 (a) (3). Count 23 charges Doerr with unlawful possession of more than one ounce of marijuana. Counts 24, 25, 27, 28, 30, 31, 33, 34, and 36 charge Doerr with unlawfully obtaining Oxycodone by subterfuge in violation of OCGA § 16-13-43 (a) (3). Counts 37 through 46 charge Downard with unlawfully obtaining Oxycodone by subterfuge in violation of OCGA § 16-13-43 (a) (3), as does Count 48.

Count 1 specifies that the pattern of racketeering activity consists of the defendants "unlawfully obtain[ing] possession of Oxycodone . . . by withholding information from various practitioners . . . that [the defendants] had obtained a controlled substance of a similar therapeutic use in a concurrent time period from another practitioner," conduct that is

Executive Wellness and Rehabilitation as the enterprise at the bottom of the RICO charge, alleges that the defendants were associated with the enterprise and participated in it "through" a pattern of racketeering activity, and specifies 19 predicate acts of racketeering that form the alleged pattern of racketeering activity. The indictment says nothing more, however, about the nature of the alleged connection between the enterprise and the pattern of racketeering activity. By their special demurrers, Kimbrough and Mayfield insisted upon greater detail about that connection.

2. An indictment may be challenged by general or special demurrer. A general demurrer "challenges the sufficiency of the *substance* of the indictment." Green v. State, 292 Ga. 451, 452 (738 SE2d 582) (2013) (citation omitted;) (emphasis supplied). If the accused could admit each and every fact alleged in the indictment and still be innocent of any crime, the indictment is subject to a general demurrer. See Lowe v. State, 276 Ga. 538, 539 (2) (579

---

prohibited by OCGA § 16-13-43 (a) (6). We note that obtaining a controlled substance by "subterfuge" is separately prohibited by OCGA § 16-13-43 (a) (3), and because Count 1 says nothing about "subterfuge" in its specification of the racketeering activity that forms the basis of the RICO charge, the counts charging the defendants with obtaining Oxycodone by subterfuge are not predicates of the RICO charge. Likewise, as the Court of Appeals acknowledged in its opinion, the counts concerning substances other than Oxycodone are not predicates of the RICO charge. See Kimbrough, 336 Ga. App. at 386-387 (2) (b) (ii).

5

SE2d 728) (2003). If, however, the admission of the facts alleged would lead necessarily to the conclusion that the accused is guilty of a crime, the indictment is sufficient to withstand a general demurrer. See id. A special demurrer, on the other hand, "challenges the sufficiency of the *form* of the indictment." Green, 292 Ga. at 452 (citation and punctuation omitted; emphasis supplied). By filing a special demurrer, the accused claims "not that the charge in an indictment is fatally defective and incapable of supporting a conviction (as would be asserted by general demurrer), but rather that the charge is imperfect as to form or that the accused is entitled to more information." State v. Delaby, 298 Ga. App. 723, 724 (681 SE2d 645) (2009) (citation and punctuation omitted).[12]

---

[12] General and special demurrers are creatures of the common law, and prior to the enactment of the Civil Practice Act in 1966, they also were used in civil proceedings to challenge the sufficiency of the pleadings. These civil demurrers were like the demurrers still used today in criminal cases. See Bramblett v. State, 239 Ga. 336, 337 (1) & n.1 (236 SE2d 580) (1977). Although the Civil Practice Act abolished civil demurrers, it retained their essential functions in the motions upon the pleadings that are so familiar to modern civil practitioners. A motion to dismiss for failure to state a claim under OCGA § 9-11-12 (b) (6) performs substantially the same function as a general demurrer. See W. Contracting Corp. v. State Highway Dept., 123 Ga. App. 331, 333 (1) (181 SE2d 89) (1971). See also Ghitter v. Edge, 118 Ga. App. 750, 751 (1) (165 SE2d 598) (1968) (construing general demurrer as a motion to dismiss under the Civil Practice Act). And a motion for a more definite statement under OCGA § 9-11-12 (e) is in some ways "the modern replacement for a special demurrer." Moultrie v. Atlanta Fed. Sav. & Loan Assn., 148 Ga. App. 650, 651 (1) (252 SE2d 77) (1979). See also B-W Acceptance Corp. v. Callaway, 224 Ga. 367, 368 (3) (162 SE2d 430) (1968) (reviewing special demurrers as both motions to strike and motions for more definite statement under the Civil Practice Act).

"Where a defendant challenges the sufficiency of an indictment by the filing of a special demurrer before going to trial, [s]he is entitled to an indictment perfect in form." State v. Grube, 293 Ga. 257, 259 (2) (744 SE2d 1) (2013). Even so, an indictment does not have to contain "every detail of the crime" to withstand a special demurrer. State v. English, 276 Ga. 343, 346 (2) (a) (578 SE2d 413) (2003). According to OCGA § 17-7-54 (a), an indictment "shall be deemed sufficiently technical and correct" if it "states the offense in the terms and language of this Code or so plainly that the nature of the offense charged may easily be understood by the jury." Subsection 17-7-54 (a) also requires, however, that an indictment state the offense "with sufficient certainty." See also Cole v. State, 334 Ga. App. 752, 755 (2) (780 SE2d 406) (2015). Consistent with these statutory directives, we have held that an indictment not only must state the essential elements of the offense charged, see Henderson v. Hames, 287 Ga. 534, 538 (3) (697 SE2d 798) (2010), but it also must allege the underlying facts with enough detail to "sufficiently apprise[ ] the defendant of what he must be prepared to meet." English, 276 Ga. at 346 (2) (a). See also Delaby, 298 Ga. App. at 726; Stone v. State, 76 Ga. App. 96, 98 (2) (45 SE2d 89) (1947). As we have explained, when a court considers whether an

7

indictment is sufficient to withstand a special demurrer, "[i]t is useful to remember that [a] purpose of the indictment is to allow [a] defendant to prepare [her] defense intelligently." English, 276 Ga. at 346 (2) (a) (citation and punctuation omitted).

3. Turning to the indictment in this case, Count 1 charges Kimbrough and Mayfield with a violation of OCGA § 16-14-4 (b), which provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity." An essential element of this offense is a connection or nexus between the enterprise and the racketeering activity. See Dorsey v. State, 279 Ga. 534, 540 (2) (b) (615 SE2d 512) (2005) (holding that evidence was sufficient to sustain RICO conviction because there was "a clear connection between the enterprise . . . and the predicate acts"). See also United States v. Welch, 656 F2d 1039, 1062 (5th Cir. 1981) ("by the use of the word 'through'" in the federal RICO statute, Congress intended "to require a sufficient nexus between the racketeering activities and the affairs of the

8

enterprise").[13] Although Count 1 identifies the enterprise with which the defendants allegedly were associated (Executive Wellness and Rehabilitation) and specifies the alleged racketeering activity through which they participated in the enterprise (unlawfully obtaining Oxycodone by withholding information from medical practitioners), the indictment fails to set forth any facts that show a connection between the enterprise and the racketeering activity, and the nature of that connection is not apparent from the identification of the enterprise, the general description of the racketeering activity in Count 1, or the subsequent counts charging more particularly the predicate acts of racketeering.

To be sure, the indictment alleges that Kimbrough and Mayfield were "associated with" the enterprise and "participated" in it "through" the pattern of racketeering activity. But not knowing whether the enterprise is alleged to be a

---

[13] The Georgia RICO Act is modeled after the federal RICO statute, and in light of their similarities, we properly may look to decisions of the federal courts construing and applying the federal RICO statute when we consider the meaning and application of the Georgia RICO Act. See Williams Gen. Corp. v. Stone, 279 Ga. 428, 430 (614 SE2d 758) (2005) ("Because the Georgia RICO Act was modeled after the federal statute, this Court has found federal authority persuasive in interpreting the Georgia RICO statute."). See also Chancey v. State, 256 Ga. 415, 418 (I) (349 SE2d 717) (1986) (OCGA § 16-14-4 (b) and its federal counterpart, 18 USC § 1962 (c), "are similar in that the foregoing core provisions both make it unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity").

licit or illicit one,[14] how the defendants allegedly were "associated with" it,[15] or how the alleged racketeering activity relates in any way to the business or affairs of the enterprise,[16] Kimbrough and Mayfield cannot possibly ascertain from the indictment what they must be prepared to meet with respect to proof of the requisite connection between the enterprise and the alleged pattern of racketeering activity. The indictment does not disclose whether the State intends to prove the connection with evidence that, for instance:

---

[14] An enterprise may be licit or illicit. See OCGA § 16-14-3 (3).

[15] As the old Fifth Circuit observed with respect to the federal RICO statute:
> The substantive proscriptions of the RICO statute apply to insiders *and outsiders* — those merely "associated with" an enterprise — who participate directly *and indirectly* in the enterprise's affairs through a pattern of racketeering activity. Thus, the RICO net is woven tightly to trap even the smallest fish, those peripherally involved with the enterprise.

United States v. Elliott, 571 F2d 880, 903 (IV) (C) (5th Cir. 1978) (citations omitted).

[16] The connection between an enterprise and racketeering activity may be proved in a myriad of ways. See, e.g., United States v. Starrett, 55 F3d 1525, 1548 (III) (A) (3) (b) (11th Cir. 1995) (connection existed between motorcycle club enterprise and predicate acts of drug distribution because the drug activity furthered the anti-social lifestyle that was the "raison d'être" of the motorcycle club and monies earned from drug sales contributed to the purchase of a clubhouse for the enterprise); United States v. Carter, 721 F2d 1514, 1526-1527 (III) (B) (1) (11th Cir. 1984) (predicate acts of drug smuggling were related to a legitimate dairy farm enterprise where the dairy farm facilities and employees were used to smuggle the drugs); Welch, 656 F2d at 1062 (III) (A) (2) (a "clear connection" existed between the sheriff's office enterprise and predicate acts involving illegal gambling where defendant used the authority of the sheriff's office to protect an illegal gambling operation in exchange for money).

- The defendants were clients of Executive Wellness and Rehabilitation and obtained Oxycodone for their own use by unlawfully obtaining prescriptions from medical practitioners employed by the enterprise;

- The defendants were clients of Executive Wellness and Rehabilitation and obtained Oxycodone for shared use at the facilities of the enterprise;

- The defendants unlawfully obtained prescriptions for Oxycodone and filled those prescriptions at Executive Wellness and Rehabilitation;

- The defendants worked for Executive Wellness and Rehabilitation and unlawfully obtained Oxycodone to supply to clients of the enterprise;

- The defendants were vendors or suppliers of Executive Wellness and Rehabilitation and unlawfully obtained Oxycodone for resale to the enterprise;

- The defendants unlawfully obtained Oxycodone, sold it, and used the proceeds to finance other activities of Executive Wellness and Rehabilitation; or

- Executive Wellness and Rehabilitation is an illicit association in fact that exists for the purpose of unlawfully obtaining, possessing, and using controlled substances.

As written, the indictment simply does not give Kimbrough and Mayfield enough information about the RICO charge to "prepare [their] defense intelligently." English, 276 Ga. at 346 (2) (a).

11

To be clear, we do not mean to suggest that a RICO indictment must contain pages and pages of extensive detail about the connection between the enterprise and the pattern of racketeering activity. We hold only that the sparse allegations of this indictment — which says *nothing at all* about the nature of the connection — are insufficient to enable the defendants to prepare for trial. Accordingly, the special demurrers ought to have been sustained, and the Court of Appeals erred when it affirmed the denial of the special demurrers. In that respect, the judgment of the Court of Appeals is reversed.

Judgment reversed. All the Justices concur.

Decided April 17, 2017.

Certiorari to the Court of Appeals of Georgia — 336 Ga. App. 381.

Garland, Samuel & Loeb, Amanda R. Clark Palmer, for Kimbrough.

Thompson & Singer, P.A., Janice A. Singer-Capek, for Mayfield.

Daniel J. Porter, District Attorney, Jon W. Setzer, Assistant District Attorney, for appellee.